POTTER, Appellant,

v.

CITY OF TROY, Appellee.

[Cite as *Potter v. Troy* (1992), 78 Ohio App.3d 372.]

Court of Appeals of Ohio,
Miami County.

No. 91–CA–06.

Decided Feb. 25, 1992.

*Sheila Kyle Reno,* for appellant.

*Robert F. Cowdrey,* for appellee.

---

FAIN, Presiding Judge.

Plaintiff-appellant, Willard Potter, appeals from a summary judgment rendered in favor of defendant-appellee, city of Troy ("Troy"). Potter contends that the trial court abused its discretion when it granted Troy's motion for summary judgment without giving notice to Potter or holding a hearing on the motion. Potter asserts that the trial court did not view the evidence in a light most favorable to him as required by Civ.R. 56(C).

We conclude that the trial court did not abuse its discretion when it ruled upon Troy's motion for summary judgment without first granting Potter a hearing on the motion. With respect to Troy, we conclude that summary judgment was improperly granted. With respect to the individual defendants, we further agree with Potter that summary judgment was improvidently granted. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

## I

Potter is an equipment operator at the Riverside Cemetery owned and operated by Troy. Potter alleged in his complaint that he was ordered by other Troy employees to remove human remains from the burial lots at Riverside Cemetery and to discard the remains in a cemetery dump. Potter alleged that other defendants participated in the removal of the remains. Potter alleges that he was then ordered by his foreman to place another corpse in the empty burial lot.

Potter alleges that upon informing city officials of this criminal activity, Potter was reprimanded for failing to first discuss the matter with the perpetrators of the activity. Potter alleges that as a result of the extreme and outrageous conduct of ordering him to engage in criminal activity and ignoring his reports of that activity, Potter suffered severe emotional distress, humiliation, mental anguish, and severe physical problems that included crying spells, insomnia, nausea, and tremors. Potter alleges that he may have been exposed to possible health hazards.

Potter's complaint also included a cause of action against his labor union and officers thereof, based upon a claim of inadequate representation, but that cause of action has been settled and compromised. It is not within the scope of this appeal.

Troy filed a motion for summary judgment on the basis that it and the other defendants were immune from liability and that Potter had failed to exhaust his administrative remedies prior to bringing this action. Potter failed to file a response to Troy's motion. From the judgment of the trial court granting Troy's motion for summary judgment, Potter appeals.

## II

Potter's first assignment of error is as follows:

"The trial court erred by not following Rule 56 of the Ohio Rules of Civil Procedure when it failed to give notice to plaintiff on defendant-appellee's motion for summary judgment which denied him an opportunity to be heard and present evidence."

Potter contends that Civ.R. 56(C) imposes an affirmative duty upon the trial court to provide notice of a motion for summary judgment to the opposing party and to hold a hearing on such motion. Potter claims that he did not receive notice that a motion for summary judgment was filed by Troy, and that if the trial court had granted a hearing on the motion, Potter would then have been placed on notice of the pendency of the motion.

■ The record before us shows that the motion for summary judgment was served upon Potter's attorney in accordance with Civ.R. 5. Civ.R. 5(B) provides as follows:

"Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or party shall be made by delivering a copy to the person to be served, transmitting it to the office of the person to be served by facsimile transmission, mailing it to the last known address of the person to be served, or, if no address is known, leaving it with the clerk of the court. The served copy shall be accompanied by a completed copy of the proof of service, required by division (D) of this rule. 'Delivering a copy' within this rule means: handing it to the attorney or party; leaving it at the office of the person to be served with a clerk or other person in charge; if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion then residing in the dwelling house or usual place of abode. Service by mail is complete upon mailing. Service by facsimile transmission is complete upon transmission."

■ A presumption of proper service exists when the record reflects that the Civil Rules pertaining to service of process have been followed. The presumption may be rebutted by sufficient evidence to the contrary. *Grant v. Ivy* (1980), 69 Ohio App.2d 40, 23 O.O.3d 34, 429 N.E.2d 1188, paragraph one of syllabus.

It is reasonable to assume that Potter's counsel received mail service addressed to her at her business address in the absence of any evidence to the contrary. Evidence showing that a party never resided at a particular address and never received mail at the address to which the mail service was addressed would be sufficient to rebut the presumption of proper service. *Id.*

In the case before us, the record reflects that service of the motion for summary judgment was made by ordinary mail on October 31, 1990. In an affidavit, Troy's counsel's secretary averred that she mailed the motion for summary judgment to Potter's counsel on that date. Under these circumstances, it was reasonable to expect that Potter would receive the notice mailed to his attorney's address.

Potter has not rebutted the presumption of proper service with evidence to the contrary. There is no evidence by affidavit or sworn testimony in the record before us indicating that a copy of the motion for summary judgment was not received or that the address used by Troy to serve notice of the motion for summary judgment was incorrect. Potter has not rebutted the affidavit submitted by Troy. Unsworn statements are not sufficient to rebut the presumption of proper service. Therefore, based upon the record before us, we conclude that proper service of the motion for summary judgment was effectuated upon Potter.

■ We now turn to Potter's contention that Civ.R. 56(C) requires a trial court to hold a hearing on a motion for summary judgment.

Civ.R. 56(C) provides as follows:

"The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party prior to the day of hearing may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Civ.R. 56(C) does not mandate that a trial court hold an oral hearing upon every motion for summary judgment filed with the trial court, even if one is requested. *State Farm Mut. Auto Ins. v. Progressive Cas. Ins. Co.* (Aug. 14, 1986), Montgomery App. No. 9769, unreported, 1986 WL 8916, citing *Gates Mills Investment Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316. Furthermore, Miami County Loc.R. 3.04 provides, in pertinent part:

"Unless otherwise ordered by the court, motions for summary judgment shall be heard on briefs and other materials authorized by Civil Rule 56(C) without oral arguments twenty days after service of the motion upon opposing party. If an adverse party also files motions for summary judgment, the hearing date shall be extended to twenty days from the service upon the opposing party of the latter motion. * * * "

Potter did not respond to Troy's motion for summary judgment; nor did he request an oral hearing on the motion. Furthermore, Potter has made no showing that he would have rebutted any averments of fact relied upon by Troy in support of its motion for summary judgment had the motion been noticed for hearing. Therefore, we fail to see how the trial court's failure to set the motion for hearing prejudiced Potter. We conclude that the trial court was within its discretion in deciding Troy's motion for summary judgment without a hearing.

Potter's first assignment of error is overruled.

### III

Potter's second assignment of error is as follows:

"The trial court erred when it did not construe the facts in a light most favorable to the plaintiff as applied to Workman's [*sic*] Compensation Law in Ohio."

■ To render summary judgment, a trial court must determine that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law; and that, when the evidence is construed most strongly in the opposing party's favor, reasonable minds can come to but one conclusion, that conclusion being adverse to the party against whom the

motion for summary judgment is made. *Harless v. Willis Day Warehouse Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

■ Potter's complaint alleges that certain defendants knew or should have known of the criminal activity allegedly occurring at Riverside Cemetery and that other defendants had actual knowledge of that activity. The criminal activity allegedly included removing the remains from burial lots at Riverside Cemetery and placing them in the cemetery dump. Other remains were then placed in the lots. Potter alleges that he informed various city officials about the criminal conduct, that they failed to take remedial action, and that they then reprimanded Potter for reporting the activity. Potter alleges that as a result of the criminal activity he was compelled to engage in, he suffered a mental and emotional breakdown. Potter alleges further that the defendants were aware of his distress and that due to the defendant's extreme and outrageous conduct, he suffered severe emotional distress, humiliation and mental anguish, as well as severe physical problems including crying spells, insomnia, nausea and tremors.

The independent tort of intentional infliction of serious emotional distress was recognized by the Ohio Supreme Court in the case of *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. The court held:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm (*Bartow v. Smith*, 149 Ohio St. 301 [37 O.O. 10, 78 N.E.2d 735], overruled.)" *Yeager, supra*, at syllabus.

The requirement that the emotional distress manifest itself in the form of some physical injury was specifically rejected. The issue is whether the defendant's conduct is so extreme that he may properly be deemed to have intentionally caused the other party to suffer serious emotional distress. The court described "extreme and outrageous conduct" as conduct which has been " * * * so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.' " *Id.*, 6 Ohio St.3d at 375, 6 OBR at 426, 453 N.E.2d at 671.

■ Potter's complaint and deposition set forth the effects of the defendants' actions upon his mental state and physical problems. Based on this evidence, viewed most strongly in Potter's favor, a cause of action for

infliction of emotional distress was stated. Potter contends that because a genuine issue of fact exists as to whether his employer committed an intentional act towards Potter causing his severe emotional distress, summary judgment for Troy was not properly granted.

R.C. 4123.74 and 4123.741 provide, respectively, as follows:

"Except as authorized in section 4121.80 of the Revised Code, employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94 of the Revised Code."

"No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

Section 35, Article II of the Ohio Constitution renders an Ohio employer immune from suit by an employee, outside the workers' compensation system. Section 35, Article II of the Ohio Constitution provides in pertinent part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the State, determining the terms and conditions upon which payments shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease and any employer who pays the premium or compensation provided by law, passed in accordance therewith, shall not be liable to respond in damages of common law or by statute for such death, injuries or occupational disease."

■ An employer and fellow employees are provided with immunity under the Ohio's workers' compensation statute; however, that immunity is available only if the acts of the employer or fellow employees are not committed intentionally. The most recent Ohio Supreme Court case on this subject is *Brady v. Safety–Kleen* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. *Brady* held as follows:

"A cause of action brought by an employee alleging intentional tort by the employer in the workplace is not preempted by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741. While such a cause of action contemplates redress of tortious conduct that occurs during the course of employment, an intentional tort alleged in this context necessarily occurs outside the employment relationship. (*Blankenship v. Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, approved and followed.)" *Id.* at paragraph one of the syllabus.

In *Brady*, the Ohio Supreme Court held that Ohio's intentional tort statute, codified as R.C. 4121.80, is unconstitutional in its entirety. This statute, enacted in 1986, had amended Ohio's workers' compensation law. *Brady, supra*, paragraph two of syllabus. Therefore, because an intentional tort is deemed to have occurred outside the employment relationship, a cause of action brought by an employee alleging an intentional tort against an employer in the workplace is not preempted by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741.

Troy claims that because it submitted evidence showing that Potter's injuries were sustained in the course of his employment and that Troy was in compliance with the Workers' Compensation Act, reasonable minds could only conclude that it was entitled to the immunity provided by Section 35, Article II of the Ohio Constitution, R.C. 4123.74 and 4123.741. Troy argues that it was Potter's duty to present evidentiary material supporting his claim that Troy was not entitled to immunity.

The standard that determines whether workplace injuries suffered by an employee are the result of an intentional action of the employer is found in *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. *Fyffe* held, in paragraph one of the syllabus, that an employee must prove:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van*

*Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"

However, the strict intent standard set forth in *Fyffe* for an employer intentional tort claim is inapplicable to the facts of this case. Rather, the less stringent standard for the tort of intentional infliction of serious emotional distress is applicable here.

"To establish an intentional tort there must be proof beyond that required to prove negligence and beyond that to prove recklessness. It is in this context that the facts should be examined to determine whether an employer has acted despite a known threat that harm to an employee is substantially certain to occur." *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 139, 522 N.E.2d 477, 481.

In *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428, the Ohio Supreme Court rejected application of the strict intent standard set forth in *Van Fossen, supra,* to the tort of workplace sexual harassment. The court noted that the language set forth in the test requiring "knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation" did not apply to a "human being" or to purely emotional injuries. The Supreme Court concluded that there was no legitimate policy reason behind applying a heightened standard of intent to workplace sexual harassment. The court further noted that the heightened standard applies only in cases where the employer's conduct is solely intentional. *Id.,* 36 Ohio St.3d at 105, 522 N.E.2d at 495.

Where a plaintiff alleges sufficient facts that reasonable minds could differ as to whether the defendant's conduct was intentional, a question of fact for the jury is created. *Kunkler, supra,* 36 Ohio St.3d at 140, 522 N.E.2d at 482, quoting *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046.

In the case before us, Potter has alleged that persons placed by Troy in authority over him required him, over his protestations, to commit criminal acts that would be offensive to a person of average sensitivity. Troy did not deny Potter's allegations. Instead, Troy chose to rest upon its claimed immunity under the workers' compensation statute, at least for summary judgment purposes.

Whether Potter's alleged emotional distress was of sufficient severity to justify recovery is a question of fact for a jury to decide; it cannot be determined as a matter of law. We conclude that there is a genuine issue of material fact as to whether Troy knew or should have known of the criminal conduct its supervisory employees allegedly required Potter to perform while employed as an equipment operator and whether injury to Potter was substan-

tially certain to occur as a result. Therefore, the trial court erred when it found that Troy was immune from liability and granted summary judgment for Troy.

Potter's second assignment of error is sustained.

## IV

Potter's third assignment of error is as follows:

"The trial court erred when it did not construe the facts in a light most favorable to the plaintiff as applied to the statutory immunity of the city of Troy or its employees."

Potter's complaint alleges that he informed city officials of the criminal activity taking place at the cemetery and they refused to take corrective action. Potter alleges that he was reprimanded for reporting the activity. As a direct result, Potter alleges that he suffered physical problems, severe emotional distress and that the defendants were aware of his emotional distress when they refused to take remedial action.

Potter claims that Troy has failed to offer evidence that its public officers were acting within the scope of their authority without bad faith and corrupt motive, and, therefore, that Troy has failed to show that it or its employees are immune from liability as asserted in their motion for summary judgment. Potter relies upon R.C. 2744.02(B)(2) for its contention that Troy is liable.

R.C. 2744.02 grants a waiver of sovereign immunity with specific exceptions. R.C. 2744.02(A)(1) and (B)(2) provide as follows:

"(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

"* * *

"(2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

■ A proprietary function includes "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery." R.C. 2744.01(G)(2)(b). Because the operation of a public cemetery is a proprietary function, Troy may be held liable for the negligent operation of its cemetery.

■ However, Troy asserts that Potter has failed to show the existence of a duty owed by the city of Troy and its officials to Potter personally. Therefore, Troy argues, Potter has no standing to bring this action. Troy cites *Kuhn v. German Twp. Bd. of Trustees* (Feb. 21, 1990), Montgomery App. No. 11733, unreported, 1990 WL 15740, to support his assertion. In *Kuhn*, we held that the duty of a board of trustees to protect and preserve cemeteries under its jurisdiction pursuant to R.C. 517.11 is a public duty and, therefore, is not enforceable by a private individual.

■ The facts in *Kuhn* are distinguishable from the facts in the case before us. The plaintiff in *Kuhn* was not an employee of the township. In the case before us, Potter is an employee of the city of Troy. As an employer, Troy owes a duty of reasonable care to its employees to provide its employees with a safe work environment. An employer may be independently liable for failing to take corrective action against an employee who poses a threat of harm to other employees. *Kerans, supra,* 61 Ohio St.3d at 493, 575 N.E.2d at 433. Potter claims that upon his reporting the criminal conduct occurring at the cemetery to city officials, they failed to take remedial action. As a result, he suffered severe emotional distress and physical problems. Therefore, we conclude that *Kuhn* is distinguishable because in the case before us, Troy had a duty to its employee, Potter, to provide a safe work environment.

■ Troy next contends that it is immune from liability pursuant to R.C. 2744.03(A)(1), because the decision not to pursue an investigation into the alleged criminal activity occurring at the cemetery qualified as a "prosecutorial, legislative, or quasi-legislative function." R.C. 2744.03(A)(1) provides:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

"(1) The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function. * * * *"

Potter's claim against Troy is based upon Troy's failure to take remedial action after he reported ongoing criminal conduct to city officials. The

immunity provided by R.C. 2744.03(A)(1) requires an employee to be engaged in the performance of a "judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function." We conclude that Troy's failure to take remedial action in response to Potter's complaints does not qualify as an action governed by R.C. 2744.03(A)(1) because Potter was not seeking judicial, prosecutorial or legislative action. Potter was simply seeking administrative action to stop him from being continually ordered to perform criminal acts that were repugnant to him. Therefore, Troy does not have the blanket immunity it relied upon in its motion for summary judgment.

A genuine issue of material fact exists as to whether Troy was negligent in the operation of its cemetery. We find no basis in this record to support Troy's claim that it is entitled to statutory immunity from any liability that may result from its negligent operation of its cemetery.

We will now address the issue of whether the individual council members and city employees of Troy are immune from liability pursuant to R.C. 2744.03(A)(6). Potter claims that the actions of Arthur Haddad, Lewis Deeter, and Elden Kelsey caused his severe emotional distress and physical problems. Haddad is the Director of Public Services and Safety. He allegedly knew of the criminal activity occurring at the cemetery, yet he took no remedial action. He reprimanded Potter for reporting the activity to Jenkins, President of Troy City Council.

Jenkins, Campbell, the Mayor of Troy, and the other individual council members are named as defendants. Potter alleges that the other council members knew or should have known of the criminal activity. Potter further alleges that Deeter and Kelsey participated in the criminal activity and ordered him to do the same. Deeter is the cemetery superintendent; Kelsey is Potter's immediate supervisor.

R.C. 2744.03(A) provides, in pertinent part:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omission were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

"(7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state, is entitled to any defense or immunity available at common law or established by the Revised Code."

The immunity granted by R.C. 2744.03 is not absolute. Although absolute immunity may be available to certain officers enumerated in R.C. 2744.-03(A)(7) if absolute immunity were previously available at common law or otherwise, none of the defendants in this case is among the officers so enumerated.

The immunity granted by R.C. 2744.03(A)(6) is qualified. There is no immunity if the acts or omissions of the employee were outside the scope of his employment or official responsibilities; if the judgment or discretion exercised was with malicious purpose, in bad faith or in a wanton or reckless manner; or if liability is expressly imposed upon the employee by the Revised Code. The underlying rationale of qualified immunity is based upon a concern for the efficient operation of government. *Singer v. Fairborn* (1991), 73 Ohio App.3d 809, 598 N.E.2d 806, citing *Catalina v. Crawford* (1984), 9 Ohio App.3d 150, 152, 9 OBR 215, 217, 458 N.E.2d 898, 900.

The effect of R.C. 2744.03, with the exception of the common law immunity preserved by R.C. 2744.03(A)(7), is to abrogate all other immunity provided under common law. The statute does not extend an absolute privilege to an administrative body whose functions are primarily administrative in nature. In that instance, a qualified privilege is deemed sufficient to protect the public servant. We conclude that members of city council, Campbell, Jenkins, Haddad, Deeter, and Kelsey are provided with qualified immunity pursuant to R.C. 2744.03.

The elements of Ohio's good-faith immunity defense include:

(1) The official's action must have been taken within the scope of his authority;

(2) the actions must have consisted of duties involving the exercise of discretion and judgment; and

(3) the individual actions must have been taken in good faith and without malice or corrupt motive. *Singer, supra,* citing *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 15 OBR 480, 474 N.E.2d 303, citing *Scot*

*Lad Foods v. Secy of State* (1981), 66 Ohio St.2d 1, 20 O.O.3d 1, 418 N.E.2d 1368.

The issue of whether the above-named individuals are subject to liability depends upon whether they acted with malicious purpose, in bad faith, or in a wanton and reckless manner.

In its decision sustaining Troy's motion for summary judgment, the trial court found that there were no genuine issues of material fact. When Troy filed its motion for summary judgment, it attached one affidavit of Chris Peeples. Peeples stated that Troy had received a certificate from the Bureau of Workers' Compensation certifying that Troy had made its premium payment into the State Insurance Fund. The evidence presented by Troy, as moving party, however, did not establish that the individuals were acting within the scope of their authority, or without bad faith or corrupt motives when exercising their discretion in determining not to relieve Potter of his onerous orders or at least to investigate his complaints. Troy has failed to prove that reasonable minds can come to only one conclusion, that being adverse to Potter. Troy has failed to satisfy the burden of showing that no genuine issue of material fact is present in this case.

Because there is a genuine issue of material fact and reasonable minds can come to more than one conclusion when reviewing the evidence in a light most favorable to Potter, we conclude that the trial court erred in finding Campbell, Jenkins, Haddad, Deeter, Kelsey and individual council members immune from liability and in granting summary judgment as to the claims against these individuals.

Potter's third assignment of error is sustained.

## V

Potter's second and third Assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WILSON and WOLFF, JJ., concur.