Leanna C. BLANKENSHIP,
et al., Plaintiffs,

v.

PARKE CARE CENTERS, INC.,
et al., Defendants.

No. C–1–94–538.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 12, 1995.

Katharine C. Weber, Cors & Bassett, Cincinnati, OH, for Leanna C. Blankenship and Amy E. Marshall.

Mark Joseph Stepaniak, Gregory Parker Rogers, Taft, Stettinius & Hollister—1, Cincinnati, OH, for Parke Care Centers Inc., Walter Malcom and Westchester Management Compmt.

## ORDER

BECKWITH, District Judge.

This matter is before the Court upon Defendants Parke Care Centers, Inc.'s ["Parke"] and Westchester Management Company's ["Westchester"] joint motions for summary judgment as to the claims of Plaintiff Blankenship (Doc. 20) and Plaintiff Marshall. (Doc. 21). Plaintiffs have filed a joint memorandum in opposition to those motions (Doc. 29), to which Defendants have filed separate replies. (Docs. 35, 36).

Also before the Court is Defendants Parke's and Westchester's motion to strike Plaintiffs' memorandum in opposition to their summary judgment motions. (Doc. 30). Plaintiffs' memorandum in opposition to the motion to strike is styled alternatively as a motion to reconsider the Court's prior order denying a continuance, and as a motion to accept Plaintiffs' memorandum opposing Defendants' summary judgment motions. (Doc. 31). Both Defendants and Plaintiffs also have filed replies regarding that issue. (Docs. 34, 37). The Court therefore will consider all of these interrelated motions at this time.

*Procedural History/The Parties' Claims*

Plaintiffs Leanna Blankenship and Amy Marshall filed their original complaint against Parke Care Centers, Inc. and Walter Malcom on August 5, 1994. (Doc. 1). On September 26, 1994, they filed an amended complaint, adding Westchester Management Company as a Defendant. (Doc. 3). Each Plaintiff alleges that in the fall of 1993, she was a 17–year–old high school student employed as a dietary aide by Parke and/or

Westchester. Both allege that during their employment, Defendant Malcom, a custodian in his forties also employed by Parke and/or Westchester, subjected them to unwelcome and sexually suggestive comments, gestures and contact. Plaintiffs contend that Defendant Malcom's conduct forced both of them to leave their employment. Although Plaintiffs concede that they suffered no loss of income, they seek damages from all Defendants based upon claims of sexual harassment under federal and state law, as well as state law claims of intentional infliction of emotional distress and assault and battery.

On July 31, 1995, Defendants Parke and Westchester filed their joint motions for summary judgment as to both Plaintiffs' claims. (Docs. 20, 21). Defendant Parke contends that it was not Plaintiffs' employer for purposes of 42 U.S.C. § 2000e liability. Moreover, both of these Defendants argue that they cannot be held liable to Plaintiffs for sexual harassment based upon any unwelcome advances made by Defendant Malcom, as Defendant Malcom's conduct was not sufficiently severe or pervasive to create a hostile working environment; as Plaintiff Marshall never made them aware of any problems; and as they promptly investigated and responded appropriately to Plaintiff Blankenship's complaints.

Defendants Parke and Westchester further urge that Plaintiffs' other state law claims must fail, as these Defendants never intended to cause Plaintiffs emotional distress and never assaulted or battered either Plaintiff, nor are they vicariously liable for Defendant Malcom's conduct. In the alternative, Defendants ask the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

On August 21, 1995—the date that their response to Defendants' summary judgment motion was due under the applicable procedural rules—Plaintiffs filed a motion to continue summary judgment proceedings, citing a need to complete discovery. (Doc. 24). Defendants opposed Plaintiff's request for additional time. (Doc. 25). On September 19, 1995, the Court denied Plaintiffs' continuance request, noting that the discovery deadline in this matter had passed on August 1, 1995. (Doc. 27).

On September 29, 1995, Plaintiffs filed a memorandum in opposition to Defendants' summary judgment motions. (Doc. 30). On October 2, 1995, Defendants moved to strike Plaintiffs' opposing memorandum, both as untimely and for failure to comply with Local Rule 7.2(a)(3)'s restrictions regarding length of memoranda. (Doc. 30).

On October 3, 1995, Plaintiffs filed a memorandum in opposition to Defendants' motion to strike. (Doc. 31). Incorporated into that memorandum, Plaintiffs also moved the Court for reconsideration of its prior order denying continuance of summary judgment proceedings, and for permission to file their memorandum opposing summary judgment out of time.

## *OPINION*

### I. *Motion to Strike Memorandum Opposing Summary Judgment*

#### A. *Untimeliness*

■ In accordance with Local Rule 7.2(a)(2), a memorandum in opposition to any motion is to be filed and served within 21 days after the motion was served. Three additional days are permitted for responding to motions served by mail. *Id.; see also* Fed.R.Civ.P. 6(e).

Applying those rules to this matter, Plaintiffs' memorandum in opposition to Defendants' summary judgment motions was filed some 38 days out of time. The certificates of service attached to Defendants' motions for summary judgment indicate that such motions were hand delivered to Plaintiffs' counsel on July 31, 1995. (*See* Docs. 20, 21). Notwithstanding the fact that any memorandum in opposition to those motions therefore was due no later than August 21, 1995, Plaintiffs waited until that date to seek a delay of the summary judgment proceedings, contending that additional discovery was needed in order to prepare an adequate response. (*See* Doc. 24). Ten days after the Court rejected Plaintiffs' plea for additional discovery time (Doc. 27), Plaintiffs filed the 54 page

memorandum opposing summary judgment (Doc. 29) that Defendants now seek to strike.

Courts ordinarily prefer to decide motions only after duly considering the position advanced by each party. Indeed, in discussing the time limits for opposing any motion, the local rules provide that a court may grant a motion based upon the adverse party's failure to oppose it, only if granting the subject motion would not "result directly in entry of final judgment or an award of attorney fees." Local Rule 7.2(a)(2). Nevertheless, the Court is not precluded from deciding even a dispositive motion without considering input from a party who was afforded an opportunity, but failed, to timely apprise the Court of its arguments.

In this matter, Plaintiffs' failure to file a timely memorandum in opposition to Defendants' summary judgment motions can be attributed only to Plaintiffs' own neglect in not completing discovery within the prescribed time period, and/or in not seeking the Court's intervention before Plaintiffs' designated time to respond had lapsed. As a practical matter, however, the Court had not begun to consider Defendants' summary judgment motions before Plaintiffs filed their opposing memorandum, and Plaintiffs' untimely filing thus did not delay resolution of those motions. Defendants have not asserted, nor does it appear that they could articulate, any prejudice stemming from Plaintiffs' untimely filing. (See Doc. 25). Given the Court's reluctance to decide a dispositive motion without considering input from all affected parties, the Court is not inclined to strike an untimely filing that resulted in no delay in the proceedings.

### B. *Failure to Conform to Local Rule 7.2(a)(3)*

 Any memorandum in opposition to a motion filed in this Court "should not exceed twenty (20) pages," and *"must* include an abbreviated introductory summary of all points raised and of the primary authorities relied upon in the memorandum" if it does exceed that page limit. Local Rule 7.2(a)(3) (emphasis added).

Defendants argue that Plaintiffs' untimely memorandum opposing summary judgment also should be stricken because its 54 pages exceed the length permitted by the foregoing local rule. (See Doc. 29). As Plaintiffs correctly note, however, their opposing memorandum does include a section entitled "Summary of Points and Authorities," in an apparent effort to comply with Local Rule 7.2(a)(3)'s provisions. (See Doc. 29, pp. i-iv). Although that "Summary," which amounts to no more than a cursory outline, is not necessarily in the form contemplated by this Court, the "Summary" nonetheless appears to conform to the unelaborated-upon letter of the local rules. Accordingly, the Court will not strike Plaintiffs' opposing memorandum for failure to conform to the rules.

### II. *Motion to Reconsider Continuance Request and/or to Accept Untimely Memorandum*

When Plaintiffs first moved to continue the summary judgment proceedings in order to allow additional discovery, the Court was unmoved by Plaintiffs' plea, given that the discovery deadline already had lapsed. In light of the Court's further conclusion herein that Plaintiffs' own neglect occasioned any need for post-deadline discovery, the Court is unwilling to reconsider its prior order denying a continuance of summary judgment.

Notwithstanding that unwillingness, the Court already has determined that better practice would counsel against striking Plaintiffs' memorandum in opposition to Defendants' potentially dispositive summary judgment motions. Accordingly, Plaintiffs' motion to accept their untimely opposing memorandum is granted.[1]

### III. *Motions for Summary Judgment*

### A. *Standard of Review Applicable to Summary Judgment Motions*

The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just,

---

1. Plaintiffs should not construe the broad latitude extended under these particular circumstances as a license to disregard further filing deadlines. The parties hereby are admonished that any and all deadlines henceforth will be ignored at the parties' peril.

speedy and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53.

The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson* at 249, 106 S.Ct. at 2510–11 (citing *Cities Serv.,* 391 U.S. at 288–89, 88 S.Ct. at 1592–93). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967), or is not significantly probative, *Cities Serv.,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### B. Elements of Ohio and Federal Sexual Harassment Claims

██ State law claims for sexual harassment brought under Ohio Rev.Code § 4112 are subject to the same standards applicable to federal harassment claims brought under Title VII. *See Ohio Civil Rights Comm'n v. Ingram,* 69 Ohio St.3d 89, 92, 630 N.E.2d 669 (1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). Courts have construed Title VII's prohibition against discrimination on the basis of sex to apply to two types of sexual harassment: 1) quid pro quo harassment, in which a supervisor demands sexual favors in exchange for job benefits; and 2) harassment that creates an offensive or hostile work environment. *See* 42 U.S.C. § 2000e–2(a)(1); *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 618 (6th Cir. 1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). In order to prevail in any hostile environment action, a plaintiff must assert and prove: 1) that she is a member of a protected class; 2) that she was subjected to unwelcome sexual harassment (*i.e.,* sexual advances or other verbal or physical conduct of a sexual nature); 3) that the harassing conduct was directed toward her because of her sex; and 4) that the harassment unreasonably interfered with her work performance and created an intimidating, hostile or offensive working environment. *Id.* at 619–20; *see also Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 183 (6th Cir.1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992).

██ As to allegations of harassment perpetrated by a co-worker, a plaintiff also must establish the existence of respondeat superior liability. *Rabidue,* 805 F.2d at 619–20, 621. The plaintiff thus must show that the employer knew or should have known of, but failed to take appropriate action to correct, the co-worker's harassing conduct. *Kauffman,* 970 F.2d at 183. The Ohio Supreme Court has adopted a similar approach. *See Kerans v. Porter Paint Co.,* 61 Ohio St.3d 486, 575 N.E.2d 428 (1991). The finder of fact should evaluate "[t]he promptness and adequacy of the employer's response ... on a case by case basis." *Rabidue,* 805 F.2d at 621. *See also Kerans,* 61 Ohio St.3d at 492, 575 N.E.2d 428 ("The appropriate response ... will depend on the facts of the particular case, including the frequency and severity of the employee's actions."). Summary judgment may be granted if the plaintiff fails to prove that the employer knew or should have

known of a co-worker's harassing conduct. *See Faris v. Henry Vogt Machine Co.,* 813 F.2d 786 (6th Cir.1987). *But see Kerans,* 61 Ohio St.3d at 486, 575 N.E.2d 428 (summary judgment not appropriate if evidence suggests that employer knew or should have known of employee's past history of harassment).

■ Whether particular conduct sufficed to create a hostile environment is subject to both an objective and a subjective test. For purposes of the objective test,

> the trier of fact, when judging the totality of the circumstances impacting upon the asserted abusive and hostile environment ... must adopt the perspective of a reasonable person's reaction to a similar environment under essentially like or similar circumstances. [Absent] conduct which would interfere with that hypothetical reasonable individual's work performance and affect seriously [her] psychological well-being ..., a plaintiff may not prevail on ... [hostile environment] sexual harassment ... regardless of whether [she] was actually offended by the defendant's conduct.

*Rabidue,* 805 F.2d at 620. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Conduct that simply "engenders offensive feelings" thus does not sufficiently affect conditions of employment to implicate Title VII. *Id.*

■ For purposes of the subjective test, a plaintiff who has succeeded in showing that a hypothetical reasonable person would find her work environment to be hostile also must demonstrate that she personally "was actually offended" by the conduct at issue, and that she "suffered some degree of injury." *Rabidue,* 805 F.2d at 620. Factors to be considered in making both the objective and subjective evaluations include the nature of the alleged harassment, the alleged victim's background and experience, the atmosphere of the workplace and the plaintiff's reasonable expectations regarding the workplace.

*Id.* A court should examine the frequency and the severity of the conduct, whether it is physically threatening, humiliating or merely offensive, and whether it unreasonably interferes with the plaintiff's work performance. *Harris,* — U.S. at —, 114 S.Ct. at 371. "[T]he presence of actionable sexual harassment would be different depending upon the personality of the plaintiff and the prevailing work environment and must be considered upon an ad hoc basis." *Rabidue,* 805 F.2d at 620.

■ Given the fact-specific nature of the inquiry into the merits of hostile environment sexual harassment claims, some courts have evinced a reluctance to grant summary judgment thereon. *See, e.g., Mann v. University of Cincinnati,* 864 F.Supp. 44, 46 (S.D.Ohio 1994) (Spiegel, J.); *Beardsley v. Webb,* 30 F.3d 524, 530 (4th Cir.1994). Nevertheless, the issue of whether specific conduct rises to a level sufficient to constitute hostile environment sexual harassment is a legal question that may be appropriate for disposition on summary judgment. *See, e.g., Goldsmith v. City of Canton,* 47 F.3d 1168 (unpub.) (6th Cir.1995); *Gebers v. Commercial Data Ctr., Inc.,* 47 F.3d 1168 (unpub.) (6th Cir.1995); *Saxton v. American Tel. & Tel.,* 10 F.3d 526 (7th Cir.1993); *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333 (7th Cir.1993); *Scott v. Sears, Roebuck & Co.,* 798 F.2d 210 (7th Cir.1986).

## C. *Elements of Intentional Infliction of Emotional Distress Claim*

■ To prevail on a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must prove that the defendant's conduct was outrageous and caused the plaintiff to suffer severe emotional distress. *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 374–75, 6 OBR 421, 453 N.E.2d 666 (1983). "Outrageous" conduct is defined as being so extreme as to exceed "all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 6 OBR 421, 453 N.E.2d 666. The defendant additionally must have intended to cause, or have acted with reckless disregard to the likelihood of

causing, the emotional distress suffered by the plaintiff. *Brandenburger v. Hilti, Inc.,* 52 Ohio App.3d 21, 29, 556 N.E.2d 212 (1989).

### D. *Elements of Assault and Battery Claim*

■ To prove assault and battery under Ohio law, a plaintiff must establish that the defendant unlawfully touched him or her with the intent of inflicting injury or of at least creating fear of injury. 6 Ohio Jur.3d, Assault § 4 (1978). To constitute battery, the contact complained of must be harmful or offensive. *Snyder v. Turk,* 90 Ohio App.3d 18, 24–25, 627 N.E.2d 1053 (1993). Although the element of intent to inflict injury may be inferred from conduct which is wantonly or grossly negligent conduct which is merely negligent will not alone suffice to sustain an action for assault and battery. 6 Ohio Jur.3d, Assault § 5; *see also Brewing Co. v. Archer,* 42 Ohio St. 213, 214 (1884).

### E. *Elements of Respondeat Superior Liability of Employer*

■ Under Ohio law, an employer ordinarily can be held liable for an intentional tort committed by an employee only if the employee's actions were "calculated to facilitate or promote the business for which [he] was employed." *Byrd v. Faber,* 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991). An employer thus could not be held liable for "independent self-serving acts of [its] employees which in no way facilitate or promote [its] business." *Id.* at 59, 565 N.E.2d 584. *See also Taylor v. Doctors Hosp.,* 21 Ohio App.3d 154, 21 OBR 165, 486 N.E.2d 1249 (1985) (hospital not liable for orderly's sexual assault upon a patient); *Bunce v. Parkside Lodge,* 73 Ohio App.3d 253, 596 N.E.2d 1106 (1991) (rehabilitation facility not liable for counselor's sexual assault upon a patient). *But see Davis v. Black,* 70 Ohio App.3d 359, 366, 591 N.E.2d 11 (1991) (reversing summary judgment for church as to its vicarious liability for workplace sexual harassment of church employee by parish priest). The issue of whether particular conduct occurred within the scope of an employee's employment can be decided as a matter of law if reasonable minds could reach only one con-clusion. *Osborne v. Lyles,* 63 Ohio St.3d 326, 330, 587 N.E.2d 825 (1992).

■ More recent Ohio decisions have deviated somewhat from the traditional view, however, finding that an employer may be liable even for conduct outside of an employee's scope of employment, if the employer knew that the employee posed a risk of harm to others, but failed to take appropriate corrective measures. *See Kerans,* 61 Ohio St.3d 486, 575 N.E.2d 428 (in the context of sexual harassment only); *Potter v. City of Troy,* 78 Ohio App.3d 372, 604 N.E.2d 828 (1992) (extending "safe workplace" theory to intentional infliction of emotional distress). The test articulated in *Potter* for holding an employer liable for intentional infliction of emotional distress is "whether an employer has acted despite a known threat that harm to an employee is substantially certain to occur." *Id.* at 381, 604 N.E.2d 828 (emphasis added) (quoting *Kunkler v. Goodyear Tire & Rubber Co.,* 36 Ohio St.3d 135, 139, 522 N.E.2d 477 (1988)).

Under either approach, however, the burden of proving that tortious conduct of an employee should be attributed to his employer presumably falls to the plaintiff. *See, e.g., Miller v. Reed,* 27 Ohio App.3d 70, 73, 27 OBR 89, 499 N.E.2d 919 (1986).

### F. *Analysis of Employer's Sexual Harassment Liability for Defendant Malcom's Actions*

In apparent deference to an employer's inability to address conduct of which it was unaware, cases regarding hostile work environment sexual harassment consistently have imposed liability upon employers only if they knew or should have known of the harassment, yet failed to take appropriate corrective action. *See Rabidue,* 805 F.2d at 619–20, 621; *Faris,* 813 F.2d at 787 (affirming summary judgment for employer where "the evidence disclosed that the employer had implemented measures to remedy any possible confrontation between plaintiff and her coworkers."). The Court therefore must examine Defendants' level of knowledge and responsiveness regarding Malcom's alleged harassment.

### 1) *Plaintiff Marshall*

Plaintiff Marshall alleges that from October 11, 1993 to October 16, 1993, Defendant Malcom blew kisses, licked his lips, and smiled at her seductively or perversely on several occasions; made obscene gestures toward his crotch on one occasion; touched his finger against her chest above her breast on one occasion; and made vulgar sexual remarks in her presence about another female co-worker on one occasion. (Doc. 29, pp. 18–19).

It is undisputed, however, that Plaintiff Marshall failed to advise any supervisory personnel of any alleged harassment by Defendant Malcom during the five or six days that she actively worked for Defendants Parke and/or Westchester. Indeed, according to her own opposing memorandum, Marshall complained to her employer about Malcom only after her supervisor sought her out when she failed to report for work, and her supervisor then solicited a written complaint. (*See* Doc. 29, pp. 19–20). Despite her supervisor's assurances that the problem would addressed, Marshall refused to return unless Malcom was removed from the workplace. (*See* Doc. 29, p. 20).

While a victim of sexual harassment is entitled to a "prompt[ ] and adequa[te] response" from her employer, *Rabidue*, 805 F.2d at 621, nothing in the case law suggests that victims are entitled to dictate the nature of the employer's corrective action. In this instance, Marshall denied her employer the opportunity to try to address the perceived problem (consisting of leers, gestures and comments of a sexual nature, plus one incident of unwelcome touching) through any measure short of transferring Malcom or terminating his employment.

Plaintiff Marshall has presented no evidence that prior to her complaint, her employer had reason to be aware of any problem with Malcom other than through Plaintiff Blankenship's then-recent and uncorroborated complaint, nor has she presented evidence that the employer previously had any reason to suspect that Malcom's behavior as alleged by Blankenship might also extend to Marshall. Marshall—a short-term employee of less than one week—nonetheless seeks compensation because her employer declined to accede immediately upon receiving her complaint to Marshall's demand that Malcom—presumably a much longer term employee—be fired or moved.

Apparently seeking to imply that the corrective action implemented as to Malcom (*i.e.*, observing him for improper conduct, then warning him) was inadequate, Marshall has set forth evidence suggesting that Malcom subsequently harassed other female employees of Defendants Parke and/or Westchester. (*See* Doc. 29, pp. 25–28). Plaintiffs apparently would have the Court evaluate their employer's actions in October of 1993 in light of Malcom's later conduct through February of 1994. Unfortunately, Plaintiffs' employer lacked the benefit of hindsight in making its earlier decisions, and thus should not be charged with the same level of knowledge now available to Plaintiffs and the Court.

The fact that the employer's first approach ultimately proved to be ineffective to prevent further harassment is not determinative as to whether that initial approach was *appropriate* under the circumstances.[2] Marshall concedes that upon receiving Blankenship's second complaint and Marshall's similar complaint on October 18, supervisory personnel questioned Malcom and immediately issued a written warning threatening him with termination. (Doc. 29, p. 21). Marshall has presented no evidence tending to show that Defendants Parke and/or Westchester should have known at that time that the threat of termination would prove futile. Indeed, Marshall's implication that the employer was somehow culpable for failing to

---

**2.** Plaintiffs propose that the lack of success of an employer's efforts is dispositive of whether such efforts were appropriate. However, they have cited no decisions binding upon this Court to support that proposition. (*See* Doc. 29, p. 39). The employer's actions herein were not inconsistent with the cited language from *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir.1987), requiring only that an employer take remedial action, "or at a minimum, inquire," when first apprised of an employee's harassment. Moreover, given *Rabidue's* unambiguous use of the word "appropriate" rather than "effective" with reference to the corrective action required of employers, the Court is unwilling to graft a requirement of success onto the *Rabidue* standard.

question Malcom sooner (*see* Doc. 29, p. 13) is undercut by her own concession that when confronted, "Malcom, as expected, denied having harassed anyone." (Doc. 29, p. 21) (emphasis added). Neither the record nor logic would support an inference that an earlier confrontation would have yielded a different result.

Reprehensible as the conduct that Marshall attributes to Malcom may be, such conduct is not likewise attributable to her employer, based upon the evidence before this Court. Rather, the undisputed evidence suggests that upon first receiving recent-hire Blankenship's isolated complaint against a longer-tenured fellow employee, and despite their inability to locate any witnesses to the alleged harassment, Defendants Parke and/or Westchester took reasonable measures to separate Malcom from the only person he was known to have allegedly harassed, and to closely monitor the situation. When Blankenship levelled a second harassment charge against Malcom, Plaintiffs' employer solicited a corroborating complaint from Marshall, procured Malcom's "expected" denial, and nonetheless warned him that future harassment would result in his dismissal.

This Court cannot conclude that such corrective actions were not an adequate, and indeed appropriate, response as to Plaintiff Marshall, under the circumstances then known to her employer. In light of the level of their knowledge and the appropriateness of their response, and contrary to Plaintiffs' arguments, Defendants Parke and/or Westchester cannot be said to have failed to provide Plaintiffs with a safe workplace. *See Kerans*, 61 Ohio St.3d 486, 575 N.E.2d 428.

### 2) *Plaintiff Blankenship*

Plaintiff Blankenship's allegations show that between September 13, 1993 and October 3, 1993, Defendant Malcom suggested once that he was "falling in love" with Blankenship, tickled her on another occasion, and hugged and/or kissed her on the cheek on four occasions. She took no measures to make her employer aware of any problem, however, until October 4, 1993, when she complained to her immediate supervisor about the aforesaid incidents. The facility's administrator responded to Blankenship's uncorroborated complaint by assigning Defendant Malcom to a different area within the building where Blankenship worked, by directing Malcom's supervisor to monitor Malcom's whereabouts, and by directing Blankenship's supervisor to communicate regularly with Blankenship, to stay apprised of any further problems.

Despite the employer's initial response to the problem, Malcom's harassing conduct toward Blankenship thereafter continued. On one occasion, Malcom approached Blankenship from behind and lifted her breasts; on another occasion, he repeatedly asked her for a date. Blankenship reported the touching incident to her supervisor. Although the supervisor pledged to seek further precautions, she thereafter refused to tell Blankenship's mother what action would be taken. Five days later, on October 22, 1993, when Malcom continued to appear in her work area, Blankenship called her mother and asked her to take Blankenship home. When Blankenship's mother appeared and pushed for a resolution of the problem, the facility's administrator asked Blankenship to resign.

The facts underlying Plaintiff Blankenship's cause of action against her employer initially impress the Court as significantly more compelling than Plaintiff Marshall's situation. Unlike Marshall, Blankenship unilaterally initiated a complaint against Malcom, continued to work after making that complaint, and continued to be harassed by Malcom even after making her employer aware that a problem existed. Notwithstanding those additional facts, however, the Court still cannot conclude that Defendants Parke and/or Westchester bear vicarious responsibility for any injury that Blankenship suffered.

The evidence before this Court indicates that until the day that Marshall came forward at her supervisor's urging, the employer's only notice of Malcom's ostensible propensities was Blankenship's uncorroborated charge of certain improper conduct directed toward her individually. Confronted with the difficult dilemma of addressing a relatively new employee's harassment allegation

against a more seasoned employee with no documented record of such conduct, the employer adopted an approach that must be deemed reasonable under the circumstances—after seeking but finding no witnesses to the harassment, the employer endeavored to segregate the two individuals involved, and to monitor the situation closely.

Subsequently, upon actively soliciting and receiving another employee's complaint that tended to corroborate Blankenship's allegations, the employer immediately warned Malcom that he would be dismissed for any future harassment, then maintained its policy of trying to isolate Blankenship from contact with Malcom, though with limited success.

Although the employer's approach ultimately proved to be unsuccessful at curbing Malcom's harassment, such response was not so inadequate or inappropriate as to render the employer liable to Blankenship. Under the applicable test, it cannot be said that Defendants Parke and/or Westchester "knew or should have known" of the harassment, but "failed to implement prompt and appropriate corrective action." *Rabidue*, 805 F.2d at 621 (emphasis added). The Court concludes that Blankenship's employer's actions were both prompt and appropriate, under the circumstances that then existed.

### G. *Analysis of Hostile Environment Allegations*

Having already determined that neither Plaintiff can sustain her burden of proving respondeat superior liability on the part of her employer, the Court need not address Defendants Parke's and Westchester's additional contention that Plaintiffs' allegations are insufficient to sustain an actionable claim for hostile environment sexual harassment. The Court nonetheless observes that although the facts herein weigh in favor of concluding that these particular Plaintiffs[3] subjectively would perceive the alleged conduct to affect the conditions of their employ-

ment, the likely reaction of a hypothetical reasonable person is less clear.

As Defendants argue, some decisions have held that comparable conduct was insufficient to rise to the level of hostile environment sexual harassment. *See, e.g., Saxton*, 10 F.3d 526; *Weiss*, 990 F.2d 333; *Scott*, 798 F.2d 210. As before, the Court's impression is that while Plaintiff Blankenship presents a stronger case than does Plaintiff Marshall, neither Plaintiff's contentions **definitively** meet the applicable legal standard. Accordingly, the nature of the conduct itself conceivably could provide an alternative basis for granting Defendants' motions.

### H. *Analysis of Intentional Infliction of Emotional Distress and Assault and Battery Claims*

The facts in this action simply do not support a conclusion that Defendants Parke and/or Westchester are primarily liable to either Plaintiff for intentional infliction of emotional distress. Nothing that such Defendants did or failed to do could be deemed "outrageous" in accordance with the applicable legal standard. *See Yeager*, 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. Similarly, having done nothing themselves that could constitute an assault and battery, Defendants Parke and Westchester could be liable to Plaintiffs for such a claim only under a respondeat superior theory of liability.

As Plaintiffs have presented no evidence suggesting either how Malcom's behavior fell within the scope of his employment as a custodian, *see Byrd*, 57 Ohio St.3d at 58, 565 N.E.2d 584, or that Malcom's employer previously had reason to know that Malcom's continued presence at the site was "substantially certain" to cause harm to Plaintiffs, *see Potter*, 78 Ohio App.3d at 381, 604 N.E.2d 828, Defendants Parke and/or Westchester also are not liable under a respondeat superior theory for either assault and battery or intentional infliction of emotional distress. *See Miller*, 27 Ohio App.3d at 73, 27 OBR 89, 499 N.E.2d 919.

**3.** In addition to being only 17 years of age at the time of the incidents in question, both Plaintiffs purportedly had been victims of sexual abuse in the past. (*See* Doc. 29, pp. 29, 32). The Court believes that Plaintiffs' youth, their relative inexperience in dealing with issues in any workplace environment, and their history of sexual victimization are all relevant factors to be considered in gauging their likely subjective reaction to the sexually-charged conduct of an over–40 male co-worker.

## IV. *Defendant Parke's Motion to Dismiss As Non–Employer*

Given the Court's conclusion that both Defendant Parke and Defendant Westchester would be entitled to summary judgment as to all of Plaintiffs' claims, the Court need not address the additional argument that Defendant Parke should be dismissed due to its lack of a sufficient number of employees to invoke Title VII and Ohio Rev.Code § 4112.01 jurisdiction.

IT THEREFORE IS ORDERED that Defendants Parke Care Centers, Inc.'s and Westchester Management Company's motion to strike Plaintiffs' memorandum in opposition to summary judgment (Doc. 30) hereby is DENIED; that Plaintiffs' motion to reconsider order denying continuance (Doc. 31) hereby is DENIED; and that Plaintiffs' motion to accept and consider Plaintiffs' memorandum in opposition to summary judgment (Doc. 31) hereby is GRANTED.

IT FURTHER IS ORDERED that Defendants Parke's and Westchester's motions for summary judgment as to the claims of Plaintiff Blankenship (Doc. 20) and Plaintiff Marshall (Doc. 21) hereby are GRANTED. Accordingly, the Clerk of Courts is directed to enter summary judgment in favor of Defendants Parke and Westchester as to all claims of both Plaintiffs.

IT IS SO ORDERED.