MILLER, APPELLANT, *v.* REED; MELLO-CREME, INC., APPELLEE.

(No. 1-84-56—Decided January 22, 1986.)

*Gallon, Kalniz & Iorio Co., L.P.A.,* and *David Zoll,* for appellant.

*Thomas R. Kuhn* and *Robert K. Leonard,* for appellee.

COLE, J. This is an appeal from a judgment of the Court of Common Pleas of Allen County for the defendant in an action for damages by the appellant against the defendant, Mello-Creme, Inc. The action involved an incident in which the plaintiff, an employee of

Mello-Creme, Inc., was struck by her supervisor, one Ron Reed. The incident was described by the plaintiff in her testimony at the trial where she stated that the staff was busy and she asked for some help from Reed who then "got all upset at me and started yelling." Plaintiff further testified that:

"A. Well, he told me we got into an argument and if I didn't shut up he was going to hit me and I told him to come and hit me.

"Q. Where were you standing?

"A. I was standing there by the icing table at the northeast end.

"Q. Okay. And where was Reed at?

"A. At the south end of the sheeter.

"Q. Okay. What happened?

"A. Well, then he walked down here to me and I walked a little ways like within here and he pushed me back into the cabinets.

"* * *

"A. I fell back against the cabinets.

"Q. Okay. Then what did he do?

"A. Then I hit him.

"Q. Where did you hit him?

"A. I hit him just around the side of him.

"Q. Will you demonstrate for the jury on me?

"A. I hit him on the arm.

"Q. You came out of the cabinet?

"A. Yeah. I came out of the cabinet and took a swung [sic] at him.

"Q. Then what did he do?

"A. He punched me.

"Q. How did he punch you?

"A. With his fist.

"Q. And where did he hit you?

"A. In my left eye."

The plaintiff was subsequently discharged.

The original action was brought against Ron Reed and Mello-Creme, Inc. (hereafter "Mello-Creme"), but Reed was subsequently voluntarily dismissed. The cause came to trial before a jury and at the close of the plaintiff's case Mello-Creme moved for a directed verdict. The complaint had asserted several grounds for recovery including that of an intentional tort within the scope of employment, that of the negligent employment of an employee known to have aggressive and dangerous tendencies, and that of violation of an implied contract not to discharge plaintiff except pursuant to the terms of an employee handbook. The defendant raised the issue of election of remedies, the plaintiff having applied for and received workers' compensation benefits.

The trial court granted the requested directed verdict on the issues involving an intentional tort but overruled that motion as to the issue of violation of an implied contract. Subsequently, the jury, on this issue, found for the defendant and judgment was rendered for the defendant.

The plaintiff thereafter appealed asserting two assignments of error which are as follows:

"I. Since the trial court found a jury question was presented on the issue of scope of employment, the directed verdict should have been denied.

"A. The standard necessary for the granting of a motion for directed verdict was not met.

"B. Ron Reed committed an intentional tort against Darla Miller in the scope of his employment as a supervisor at Mello-Creme.

"C. Mello-Creme is liable on the independent theory of ratification.

"II. The recent Ohio Supreme Court case of *Jones* v. *V.I.P.* resolves the issue of election of remedies in an intentional tort case, and establishes that the court erred in barring plaintiff's claim because she had collected workers['] compensation benefits for her injuries."

The second assignment of error is well-taken, but not dispositive of this appeal. The case of *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90,

paragraph two of the syllabus, held that receipt of workers' compensation benefits does not preclude an employee from pursuing a common-law action for damages against the employer for damages for an intentional tort█

Thus, the receipt of workers' compensation benefits is not a bar to this action if there was established by the evidence the existence of an intentional tort by the employer. However, the question still remains as to whether or not a jury question was presented as to the existence of an intentional tort of the employer and this issue is addressed by the first assignment of error.

There is no question that the facts presented in evidence were sufficient to establish an intentional tort in the traditional meaning of that term. There was evidence of an actual battery which was, it may be inferred, fully intended by Reed. The question, however, remains as to whether there is evidence from which it may be reasonably inferred that this intent of Reed was the intent of Mello-Creme, and this question is one of scope of employment. In *Jones, supra,* the Supreme Court stated at 95:

"* * * [A]n intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur. * * *"

In the various factual situations presented in *Jones, supra,* the emphasis was on the inferred belief *of the employer* that an injury was substantially certain to occur. Here, however, the employer did nothing and intended nothing, unless the act of the employee, Reed, and his intention, were also to be imputed to the employer. This then presents an issue as to scope of employment.

In 3 Ohio Jurisprudence 3d (1978) 235, Agency, Section 155, it is stated:

"The principal or master, ordinarily, is not liable for the willful and malicious torts of the subordinate, if the act is done for no other purpose than to gratify the subordinate's ill will against the person injured, for such assault is a departure from the employment. * * *" (Footnotes omitted.)

In *Finley* v. *Schuett* (1982), 8 Ohio App. 3d 38, at 39, it is said:

"It is clear that a principal shall be liable for the tortious acts of his agent only when such acts were done in the execution of his principal's business and within the scope of the agent's employment. See *King* v. *Magaw* (1957), 104 Ohio App. 469, 471-472 [5 O.O.2d 162]. See, also, *Combs* v. *Kobacker Stores* (1953), 65 Ohio Law Abs. 326, and *Rouda* v. *Lowry & Goebel Co.* (1917), 9 Ohio App. 91. Where an act has no relation to the conduct of the master's business, it may not be argued that the servant was acting upon the scope of his authority. See *Longona* v. *Bd. of Liquor Control* (App. 1958), 6 O.O.2d 417. There is no presumption that the wrongful act of the agent was the act of the principal; authority to do the act must be demonstrated, or ratification of the act by the principal shown. Where the tort consists of a wilful and malicious act, as here, it is not generally considered within the scope of the agent's employment. *Southeastern Greyhound Lines* v. *Harden's Admx.* (1940), 281 Ky. 345, 136 S.W.2d 42; *John* v. *Lococo* (1934), 256 Ky. 607, 76 S.W.2d 897. * * *"

The question narrows to the situation here presented. The evidence establishes that in the operation of the business Ron Reed was, at that time, the immediate supervisor of the plaintiff. The evidence further establishes that Ron Reed in anger shoved and struck the plaintiff in response to a request for assistance made by the plaintiff.

"Supervisor" is defined in Webster's Third New International Dic-

tionary (1981) as follows, here potentially applicable:

"1: one that supervises a person, group, department, organization, or operation: as a: such a person having authority delegated by an employer to hire, transfer, suspend, recall, promote, assign, or discharge another employee or to recommend such action * * *."

The word "supervise," again, as potentially applicable, is defined as follows:

"2: to coordinate, direct, and inspect continuously and at first hand the accomplishment of: oversee with the powers of direction and decision the implementation of one's own or another's intentions * * *." *Id.*

Missing from these definitions is the concept of disciplining another who is being supervised. Clearly, from the evidence, Ron Reed was not supervising at the time of the altercation, but at the most was attempting to discipline the plaintiff for failure to follow his command to "shut up." Discipline is not a part of supervision in the usual and customary meaning of the term. Again, we quote the Webster definition:

"supervision * * *: the act, process, or occupation of supervising: direction, inspection, and critical evaluation * * *." *Id.*

Direction, inspection and critical evaluation do not include the concept of disciplinary action and hence we conclude, contrary to the expressed conclusion of the trial court, that Ron Reed was not acting within the scope of his employment. He attempted to and did, with force and violence, act to discipline the plaintiff for disobedience of his directions and in so doing exceeded the defined limits of his authority as a supervisor.

We then conclude that the evidence before the trial court was insufficient. Civ. R. 50(A)(4) provides:

"(A) Motion for directed verdict
"* * *

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

It is our conclusion that the description of Ron Reed as "supervisor" does not permit any reasonable inference that Ron Reed had any authority or power to discipline in any way the plaintiff; that at the time of the altercation he was clearly attempting to, by physical violence, discipline her; and that this act was beyond the scope of his employment.

Moreover, it cannot be inferred that pushing and hitting an employee for asking a question is action in the interests of the employer. It is basically an expression of the temper of the actor himself and accomplished nothing for the employer.

It must then be concluded that upon this determinative issue only one conclusion can be reasonably arrived at: that plaintiff failed to establish that the act of Ron Reed was the act of the defendant-employer or that his intent to strike was the intent of the defendant-employer.

Plaintiff, now appellant, further asserts that the trial court erred in not finding that defendant knew or should have known of dangerous aggressive tendencies of Ron Reed. We find no evidence at all to sustain this contention.

Plaintiff further asserts an independent ground of ratification. It is asserted that the discharge, after the altercation, of plaintiff by defendant, is sufficient evidence to establish a ratification of the act by Ron Reed.

There are ample alternative reasons

74

for the discharge of plaintiff. She testified in fact that she told Reed to hit her, called her boyfriend after the altercation, let him in by the back door and prolonged the incident by a street fight that later ensued. We cannot from the total circumstances presented arrive at any reasonable inference that the act of discharge constituted a ratification of Reed's violent action beyond the defined scope of his authority.

For these reasons, we find the assignments of error to be not well-taken. While the trial court may have been in error in his reasons given orally for his judgment in granting the motion for directed verdict, those reasons were not contained in the judgment entry. For the reasons set forth above, we conclude that the action taken by the trial court, although for what may have been erroneous reasons, was nevertheless correct.

*Judgment affirmed.*

GUERNSEY, P.J., and MILLER, J., concur.