HOGAN, Appellant,

v.

FIELD CONTAINER CORPORATION, Appellee.

[Cite as *Hogan v. Field Container Corp.* (2001), 145 Ohio App.3d 446.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-01-11.

Decided Aug. 15, 2001.

448

*Michael Garth Moore,* for appellant.

*Catherine Adams; Robert H. Brown* and *Robert T. Bernstein,* for appellee.

THOMAS F. BRYANT, Judge.

Plaintiff-appellant Carolyn Sue Hogan ("Hogan") brings this appeal from the judgment of the Court of Common Pleas of Marion County granting summary judgment to defendant-appellee Field Container Corp. ("Field").

Hogan began working for Field in 1973 in the finishing facility. She worked as an inspector checking and folding paper cartons in the Marion facility. During her employment, Hogan alleges that machine operators, lead men, and supervisors subjected her and the other women to sexual harassment. After an incident with an operator, Richard Bowens ("Bowens"), Hogan left her position in August 1999.

On January 31, 2000, Hogan filed a complaint against Field and Bowens alleging (1) sexual harassment by Bowens and the other male employees and supervisors at Field, (2) assault and battery by Bowens, (3) an intentional violation of public policy, (4) negligent retention of Bowens by Field, (5) violation of the Violence Against Women Act, (6) sex discrimination, (7) discriminatory discharge, and (8) retaliation for her testimony in another sexual harassment case brought against Field. Hogan later voluntarily dismissed Bowens as a defendant. On October 13, 2000, Field filed a motion for summary judgment. Hogan filed her memorandum contra the motion for summary judgment on November 14, 2000. On February 13, 2001, the trial court granted summary judgment to Field. It is from this judgment that Hogan appeals.

Hogan makes the following assignments of error:

"The trial court erred in granting summary judgment for Field on the sexual harassment claim.

"The trial court erred in granting summary judgment on the assault and battery claim and on the negligent retention claim.

"The trial court erred in granting summary judgment on the discriminatory discharge claim.

"The trial court erred in granting summary judgment on the retaliation claim."

When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. *Franks v. The Lima News* (1996), 109 Ohio App.3d 408, 672 N.E.2d 245. "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192. However, the nonmoving party must present evidence on any issue for which it bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. When reviewing the judgment of the trial court, an appellate court reviews the case *de novo. Franks, supra.*

In the first assignment of error, Hogan argues that the trial court erred by dismissing her sexual harassment claim. R.C. 4112.02(A) makes it an unlawful discriminatory practice for an employer to discriminate against an employee because of the employee's gender with regard to hire, tenure, terms, conditions, or privileges of employment, or any other matter related to employment. A violation of R.C. 4112.02(A) can be established by showing a "hostile environment" harassment—harassment that may not affect economic benefits, but has the purpose or effect of creating a hostile or abusive working environment. *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726.

"In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or an matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

"* * *

■ "[T]he issue of 'whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' * * *

■ "The totality-of-the-circumstances standard precludes the kind of analysis that carves the work environment into distinct harassing incidents to be judged each on its own merits. Instead, it is essential that the work environment be viewed as a whole, 'keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes.'

"* * *

■ "[I]n order to determine whether the harassing conduct was 'severe or pervasive' enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." *Id.* at 176–181, 729 N.E.2d at 732–736.

■ When evaluating a motion for summary judgment, we must view the evidence in favor of the nonmoving party. Hogan meets the first element of the claim by her testimony upon deposition that she did not want to be subjected to the abuse of Bowens and other employees, including her immediate supervisor. The second element is met by the depositions of Hogan and other women who worked at Field. The testimony in those depositions is that some of the men working at the plant would rub up against the women while they were working, would unzip their pants in front of the women, would grab their crotches in front of the women while making sexual comments, and a variety of sexually explicit comments were directed at the female employees. Given this testimony, a reasonable person could conclude that the behavior was motivated by the gender of the victims. The third element is met by the testimony of Hogan that the behavior was occurring so frequently that she could not even give dates of the events. She also testified that the behavior would upset her so much that she would leave work in tears. From this testimony, a reasonable person could conclude that the harassment was severe and pervasive. Finally, Hogan testified that the harassment was coming from the supervisors as well as from the other employees. She also testified that various women had complained to management concerning the harassment over the years and that no long-term changes resulted from the complaints. Based upon her observations, Hogan admits that

she did not bother to go to the supervisors because she did not believe it would do any good. However, the testimony does indicate that Hogan's immediate supervisor witnessed the harassment by the other employees and joined in the harassment at times. Thus, the fourth prong of the test is met. Since there are genuine issues of material fact, the granting of summary judgment on the sexual harassment claim was error. The first assignment of error is sustained.

Hogan argues in the second assignment of error that Field is liable for negligently retaining Bowens and for Bowens's assault and battery upon her. An employer is liable for the intentional tort of one employee against another employee if the act is done for the purpose of furthering the employer's business. *Miller v. Reed* (1986), 27 Ohio App.3d 70, 27 OBR 89, 499 N.E.2d 919. The testimony was that Bowens had struck Hogan with a box because he was mad at her. This alleged act[1] was done for no other purpose than to satisfy Bowens's anger towards Hogan. There is no testimony that Bowens's behavior furthered Field's business in any way. Thus, Field cannot be liable for Bowens's actions. Additionally, Hogan testified that she did not notify management of the incident at the time. She testified that she told her supervisor that she did not want to be placed on Bowens's line the next day. However, Hogan did not inform management of what exactly happened until after she had walked off the job.

Hogan also claims that Field is liable for the negligent retention of Bowens after the incident. The basis for this claim is that Bowens was not fired for the incident. However, the testimony indicates that Field investigated the incident but could not substantiate it because there were no independent witnesses. Field then proceeded to terminate Bowens's employment based upon other misbehavior. Thus, Field took action to ensure that Bowens did not remain a danger to any employees and did not negligently retain him. The second assignment of error is overruled.

In the third assignment of error, Hogan argues that the trial court erred in granting summary judgment on the issue of discriminatory discharge. There is no question that Hogan was not actually terminated from employment. She walked off the job and refused to return when management offered her the same position with no loss of benefits or status after the termination of Bowens. Thus, the only question is whether Hogan was constructively discharged. The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.

---

1. There were no witnesses to the incident. Bowens claims that it was an accident and Hogan claims that it was intentional.

*Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272. To make this determination, a finder of fact must look at the totality of the circumstances.

Here, Hogan testified that several of the employees, not just Bowens, were involved in the sexual harassment of women in the workplace. The harassers included her immediate supervisor, Billy Davis ("Davis"). She also testified that over the years, various employees had complained about the harassment, yet no long-term changes occurred. When a complaint was filed, the situation improved for a time, and then regressed to the prior standard. Given this testimony, and presuming it to be true for the purpose of evaluating a motion for summary judgment by Field, a reasonable person could find that the conditions were so intolerable as to force Hogan to resign. Thus, the granting of summary judgment was inappropriate in this case. The third assignment of error is sustained.

■ The final assignment of error addresses Hogan's claim of retaliation. Hogan admitted that the harassment of the women, including herself, occurred prior to the filing of a sexual harassment claim by another female employee. After Hogan testified by deposition on behalf of another female employee in a sexual harassment suit, she claims that several of the male employees, including Davis, increased the level of the harassment. After the deposition, Davis allegedly placed Hogan on Bowens's line almost every day, sped up the lines on which she was working, and required her to work alone on a line that usually had two inspectors. Hogan then complained to Davis's boss, Ken Bloom, who ordered that the lines be slowed. Afterwards, Davis told Hogan never to go over his head again. Hogan also testified that she believed that Bowens sabotaged a hydraulic table so that it would collapse when she started work. Hogan claims that she complained to Don Zimak, the first-shift supervisor, but that her complaints were not investigated. Given this testimony, a reasonable person could conclude that Hogan was the victim of retaliation. Thus, the trial court erred in granting summary judgment. The fourth assignment of error is sustained.

The judgment of the Court of Common Pleas of Marion County is affirmed in part and reversed in part.

*Judgment affirmed in part*
*and reversed in part.*

WALTERS, P.J., and SHAW, J., concur.