DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment that granted a directed verdict in favor of U.S. Health Corporation of Southern Ohio, defendant below and appellee herein, on the claims brought against it by William B. Fiske, plaintiff below and appellant herein.
 {¶ 2} The following errors are assigned for review:
FIRST ASSIGNMENT OF ERROR:
"The trial court erred in granting U.S. Health Corporation's motion for a mistrial after counsel discussed the failure of an on call surgeon to perform a consultation examination of william fisk when requested to do so."
SECOND ASSIGNMENT OF ERROR:
"The trial court erred in granting defendant's motion for a directed verdict when the trial resumed on March 3, 2004 without analyzing the evidence of record and ignoring this court's previous ruling remanding this case for trial."
THIRD ASSIGNMENT OF ERROR:
"The trial court erred in awarding defendant attorneys and expert fees as a result of the alleged mistrial when there was no statutory authority or civil rule applicable to a motion for expenses."
FOURTH ASSIGNMENT OF ERROR:
"The trial court erred in denying plaintiff's motion to reconsider the dismissal of count iii of the complaint based on agency by estoppel on the basis of the expiration of the statute of limitations when the claim was added to the initial law suit by way of a judgment entry prior to the voluntary dismissal of the first suit."
FIFTH ASSIGNMENT OF ERROR:
"The trial court erred in failing to recognize binding ohio supreme court precedent that the doctrine of agency by estoppel applies to defendant's emergency room and the negligence of the surgeon in failing to perform a consultation examination of plaintiff."
 {¶ 3} This is the third time that this court has had the opportunity to become involved in the instant case. Initially, we briefly review the pertinent, underlying facts. On February 20, 1993, the appellant visited the Southern Ohio Medical Center (SOMC) emergency room with complaints of severe abdominal pain. Upon his arrival, he informed hospital personnel that he is HIV-positive, meaning that he is infected with the Human Immunodeficiency Virus known to cause Acquired Immune Deficiency Syndrome (AIDS).
 {¶ 4} Various procedures were performed and the appellant was examined by Dr. Robert Dale (the emergency room physician) who advised him that he might be suffering from appendicitis. Dr. Dale recommended that appellant be examined by the on-call surgeon, Dr. Richard Rooney. Dr Rooney, however, allegedly refused to examine the appellant because he is HIV positive. Appellant was later informed that he would not be admitted to SOMC and that he must be transported to another hospital. Eight or nine hours after his arrival at the emergency room, and at his own expense, the appellant was transferred to Doctors North Hospital in Columbus where he was admitted for several days for observation. Ultimately, the appellant was released from the hospital.
 {¶ 5} Appellant commenced his first action against appellee and Dr. Rooney on February 18, 1994 and alleged negligence and unlawful discrimination. Appellee denied the allegations and, three months later, moved for summary judgment which was promptly granted. We reversed that judgment and held that the appellant set out prima facia cases in both negligence and discrimination. See Fiske v. Rooney (1995),105 Ohio App.3d 269, 663 N.E.2d 1014 ("Fiske I").
 {¶ 6} On remand, the appellees filed additional summary judgment motions and relied on some of the same evidence this Court rejected inFiske I. Appellant requested additional time to conduct discovery to rebut those motions, but the appellee "strenuously object[ed]" to an extension. The trial court consequently denied the appellant's request. Nevertheless, the appellant filed several memoranda and various affidavits in opposition to summary judgment. The trial court once again entered judgment for appellee and Dr. Rooney and ordered that the appellant's claims be dismissed.
 {¶ 7} Once again, this Court reversed those judgments and held, inter alia, that the trial court: (1) abused its discretion in not granting appellant additional time to conduct discovery; (2) erred in refusing to consider some of appellant's evidentiary materials in opposition to summary judgment; and (3) erred generally in granting summary judgment to appellees. See Fiske v. Rooney (1998), 126 Ohio App.3d 649, 711 N.E.2d 239
("Fiske II"). We remanded the case for further proceedings. On April 5, 2001, the appellant dismissed all claims without prejudice.
 {¶ 8} Appellant commenced the case sub judice the following day, this time naming the SOMC as the sole defendant. Appellant alleged that the appellee was negligent in its treatment and is liable for negligent treatment and discrimination by Dr. Rooney. He also alleged that SOMC perpetrated discriminatory practices against him in violation of R.C. chapter 4112. Appellant requested compensatory damages in excess of $25,000, together with punitive damages and attorney fees. Appellee denied liability and asserted a variety of defenses.
 {¶ 9} On May 1, 2002, the appellee filed a motion to dismiss count three of the complaint (that alleged Dr. Rooney was an agent of the hospital and the hospital is vicariously liable for his refusal to treat appellant). Appellee argued this claim was not part of the original complaint and could not be preserved under the "savings statute." Thus, appellee reasoned, the claim is time barred by operation of the statute of limitations. Further, appellee asserted that Dr. Rooney's refusal to treat the appellant was an intentional act that would be outside the scope of his employment and, thus, the hospital could not be held liable for his conduct. Appellant did not respond to that motion and on July 3, 2002, the trial court granted the motion and dismissed count three of the complaint.
 {¶ 10} On October 9, 2002, new counsel entered an appearance on the appellant's behalf and immediately requested the court to reconsider its dismissal of count three. Appellant argued that the hospital was estopped from arguing the agency relationship of Dr. Rooney. Appellee noted that the appellant did not address the primary issues raised in its motion to dismiss — that the claim is time barred under the statute of limitations and that it could not be held liable for the intentional actions of its agents.
 {¶ 11} On November 25, 2002, the trial court denied the motion for reconsideration. Appellant filed a second motion for reconsideration that was also overruled. {¶ 12} The case came on for jury trial on September 8, 2003. Prior to the commencement of the trial, some discussion occurred in chambers that apparently resulted in an order that appellant make no reference to anything Dr. Rooney stated unless Rooney appeared at trial and was prepared to testify.[1] Subsequently, in his initial statement to the potential jury pool, appellant's counsel remarked that the hospital surgeon, "on being advised of the fact that Mr. Fiske was HIV positive, refused to treat the patient." At this juncture, the appellee requested a mistrial on the basis of this remark. The trial court granted the motion and ordered appellant to pay appellee's attorney fees ($3,806.25) and expert witness ($1,733.68) fees for that day.
 {¶ 13} A second attempt was made at a jury trial on March 3, 2004. This time, the appellant successfully subpoenaed Dr. Rooney to testify but the appellee requested that his testimony be excluded from evidence because it "allowed" the appellant to benefit from his "own outrageous action."[2] The trial court again ordered that no mention be made of "Dr. Rooney's acts or statements." In light of that ruling, both parties agreed to proffer to the court a description of the evidence that would be adduced at trial. After hearing those descriptions, the trial court directed a verdict in favor of the appellee. This appeal followed.
 I {¶ 14} We first jointly consider appellant's fourth and fifth assignments of error that each involve the "agency claim" set forth in count three of his complaint. As mentioned previously, the trial court dismissed that claim on July 3, 2002 and overruled several motions to reconsider that judgment. Appellant asserts that the trial court erred both in dismissing his claim as well as overruling his various motions for reconsideration. We agree.
 {¶ 15} This assignment of error raises a multitude of procedural and substantive issues that we will address in the most orderly fashion possible. First, the appellee filed its motion to dismiss on May 1, 2002. Appellant did not oppose that motion and on July 3, 2002, the trial court granted the motion. The failure to oppose the dismissal of count three could arguably be construed as a waiver of any error. For the following reasons, however, we decline to apply a waiver theory to this issue.
 {¶ 16} Shortly after the dismissal, the appellant's counsel (Elliot Fishman) filed a motion to withdraw from the case on grounds that he was closing his law practice for "personal reasons." Several days later, the appellant appeared pro se and asked for a continuance because former counsel Fishman had been hospitalized and he had not been able to retain new counsel. On July 1, 2002, in the midst of disciplinary action against him, Mr. Fishman resigned his license to practice law. See In reResignation of Fishman (2002), 97 Ohio St.3d 1203, 776 N.E.2d 493. In view of these problems with appellant's counsel at the same time the motion to dismiss was filed, and in view of the Ohio Supreme Court's admonition that cases should be decided on their merits when possible,Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, 454 N.E.2d 951; Petersonv. Teodosio (1973), 34 Ohio St.2d 161, 175, 297 N.E.2d 113, we believe that the interests of justice weigh against applying a waiver theory.
 {¶ 17} We now turn to the appellee's arguments in support of dismissal of this claim. First, the appellee asserted that the agency claims are time barred by the statute of limitations because they were not included in the original complaint and were not preserved by the "savings" statute. We note that the appellee, has not, either below or on appeal, identified the particular limitation statute on which it relies. That said, given the eight years that elapsed between 1993 (when the appellant visited SOMC) and 2001 (when he refiled his complaint), virtually any statute of limitation would bar this action unless it were preserved under R.C. 2305.19.[3]
 {¶ 18} The provisions of R.C. 2305.19 state in pertinent part:
"(A) In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later."
 {¶ 19} This statute applies to save a plaintiff's action otherwise barred by the statute of limitations when the original suit and the new action are "substantially similar." Children's Hosp. v. Ohio Dept. ofPublic Welfare (1982), 69 Ohio St.2d 523, 525, 433 N.E.2d 187; also seeStone v. N. Star Steel Co., 152 Ohio App.3d 29, 786 N.E.2d 508,2003-Ohio-1223, at ¶ 14; Carl L. Brown, Inc. v. Lincoln National LifeIns., Franklin App. no. 02AP-225, 2003-Ohio-2577, at ¶ 41. This Court and others have held that whether a new action is substantially similar to an original action for purposes of R.C. 2305.19 does not always depend on whether the original action set forth the same legal theories as asserted in the new complaint. Instead, the question turns on whether the original complaint and the new complaint contain similar factual allegations so that it can reasonably be said that the party or parties were put on fair notice of the type of claims that could be asserted.Lanthorn v. Cincinnati Ins. Co. (Dec. 5, 2002), Adams App. No. 02CA743; also see Stone, supra at ¶ 15 (a new complaint is substantially the same as the original complaint for purposes of the saving statute when the new complaint differs only to the extent it adds new recovery theories based upon the same factual occurrences stated in the original complaint); Riosv. Grand Slam Grille (Feb. 18, 1999), Cuyahoga App. No. 75150 (concluding a new complaint asserting malicious prosecution and abuse of process was substantially the same as original complaint that asserted malicious prosecution when both claims arose out of the same conduct and both the new and original complaints alleged the same facts establishing the right to relief); Vercellotti v. HVC-Daly, Inc. (Dec. 5, 1997), Lucas App. No. L-97-1063; Carrier v. Weisheimer Companies, Inc. (Feb. 22, 1996), Franklin App. No. 95APE04-488 (both holding that when determining whether a new complaint is substantially the same as original complaint "a [trial] court must determine whether the allegations in the first action gave the defendant fair notice of the allegations in the second action"); Jones v. St. Anthony Med. Ctr. (Feb. 20, 1996), Franklin App. No. 95APE08-1014 (concluding that a new complaint and the original complaint were substantially the same when the new complaint differed "only to the extent that new theories of recovery, based on the same factual occurrence, are added to the new complaint"); Andrews v. ScottPontiac Cadillac GMC, Inc. (June 2, 1989), Sandusky App. No. S-88-32 (stating "a new complaint is substantially the same as an original complaint "where the new complaint differs only to the extent that new theories of recovery, based on the same factual occurrence, are added to the complaint").
 {¶ 20} Applying these principles to the present case, it appears that the second complaint (which contains the disputed count three) is substantially similar to the first complaint. The parties are the same (although Dr. Rooney is not named in this second action) and the factual allegations are the same. The only difference is that a new theory of recovery (vicarious liability) has been added. Appellee was on notice from the first action that the appellant sought to hold it liable for Dr. Rooney's actions. The mere inclusion of a new theory of liability does not require the conclusion that those actions are dissimilar. For these reasons, we do not agree that count three of the complaint is time barred by the statute of limitations.
 {¶ 21} Appellee's second reason for seeking dismissal of the claim was that Dr. Rooney's alleged refusal to treat appellant was a willful or intentional act. Thus, appellee contended that this act occurred outside the scope of Dr. Rooney's employment and SOMC could not be held vicariously liable. In support of its argument, the appellee cites Millerv. Reed (1986), 27 Ohio App.3d 70, 72, 499 N.E.2d 919, for the proposition that an employer cannot be held liable for the intentional torts (in that case, a physical assault) of its employees because such acts are generally considered outside the scope of employment. We believe, however, that Miller, and other similar cases, are very different from the case sub judice.
 {¶ 22} We do not dispute that, as an abstract proposition of law, an intentional, willful attack committed by an agent to vent his own spleen or malevolence is a clear departure from employment and the principal cannot be held legally responsible for those actions. See Byrd v. Faber
(1991), 57 Ohio St.3d 56, 59, 565 N.E.2d 584; Vrabel v. Acri (1952),156 Ohio St. 467, 474, 103 N.E.2d 564. We note that appellant did not allege an intentional tort on the part of Dr. Rooney. Rather, he alleged that Dr. Rooney's refusal to see him constituted negligence.
 {¶ 23} It is well settled that negligence consists of acts of commission as well as acts of omission, and includes the failure to do an act which is necessary for the protection of someone to which the actor (in this case, a physician) is under a duty to protect. See 70 Ohio Jurisprudence3d (2004)59, Negligence, § 10; Prosser Keeton, Torts (1984 5th Ed.) 373-385, § 56.[4] Dr. Rooney was the surgeon on-call at SOMC and he had a duty to treat those patients who came to the emergency room and required his services. His alleged refusal to treat the appellant, if that is found to be the case, constitutes an act of omission and may provide the basis for a negligence claim. Further, hospitals have absolute duties to emergency room patients to provide competent medical care. A hospital may be held vicariously liable for the negligence (both acts of commission and acts of omission) of its caregivers. 40A American Jurisprudence2d (1999)460, Hospitals and Asylums, § 48. For these reasons, the appellee could be held vicariously liable for damages resulting from Dr. Rooney's refusal to treat the appellant because he was HIV positive.
 {¶ 24} Having determined that the trial court erred in dismissing count three of the complaint, we must now decide whether the court erred in overruling the motions for reconsideration of that order. The Ohio Rules of Civil Procedure do not provide for motions for reconsideration. See Pitts v. Dept. of Transportation (1981), 67 Ohio St.2d 378,423 N.E.2d 1105, at paragraph one of the syllabus, and they are considered nullities, id. at 80; State, ex rel. Pendell v. Adams Cty Bd.of Elections (1988), 40 Ohio St.3d 58, 60, 531 N.E.2d 713; also seeState, ex rel. Boardwalk Shopping Center, Inc. v. Court of Appeals forCuyahoga Cty. (1990), 56 Ohio St.3d 33, 35, 546 N.E.2d 86, as are any judgments entered thereon. See Kauder v. Kauder (1974), 38 Ohio St.2d 265,267, 313 N.E.2d 797; William W. Bond, Jr. and Assoc. v. AirwayDevelopment Corp. (1978), 54 Ohio St.2d 363, 365, 377 N.E.2d 988.
 {¶ 25} Consequently, this court does not typically review entries that deny reconsideration of a final order. See Wright v. DeWitt (Feb. 4, 2002), Ross App. No. 02CA2645; Williams v. Ohio Adult Parole Authority
(Aug. 28, 1996), Ross App. No. 95CA2154; DWP Corp. v. Dixie MachineSupply Co. (May 8, 1992), Pike App. No. 466. However, the trial court's dismissal of count three was an interlocutory order, not a final order, and was subject to change any time before entry of a final judgment. See generally Gahanna v. Cameron (Dec. 17, 2002), Franklin App. No. 02AP-255; Toledo Heart Surgeons v. Toledo Hosp. (Jul. 1, 2002), Lucas App. No. L-02-1059. Because of the problems appellant had with his attorney when the claim was dismissed, and considering that the claim was neither time barred nor failed on substantive grounds, we believe that the trial court should have reinstated the claim.
 {¶ 26} For these reasons, the fourth and fifth assignments of error are well taken and are hereby sustained.
 II {¶ 27} We now turn to the appellant's first and third assignments of error that address the 2003 mistrial. Appellant argues that the trial court erred both in granting the mistrial and in ordering him to pay attorney fees and expert witness fees. Again, we agree.
 {¶ 28} As we noted above, the trial court granted the mistrial because appellant's counsel supposedly violated a pre-trial order (made in chambers) to not refer to any statements made by Dr. Rooney. We find no record of this order, either in entry form or in the transcript, but the trial court's September 29, 2003 judgment entry describes it as follows:
"Prior to trial, upon motion for good cause shown, the Court ordered that no reference be made to any statements by Dr. Richard Rooney until such time as it was clear that Dr. Rooney would be present for trial. Dr. Rooney having not been served subpoena for trial, the Court, therefore, ruled prior to trial that there could be absolutely no reference to any acts or statements of Dr. Rooney."
 {¶ 29} We make several observations at the outset. First, while this entry is fairly clear in its scope, the court's verbal order in chambers may not have been so clear and the appellant's counsel may not have been fully aware of the full extent of the court's order. Second, we have reviewed the September 8, 2003 trial transcript and note that counsel does not refer to Dr. Rooney by name. It appears that by not mentioning Dr. Rooney or anything that Dr. Rooney stated, appellant actually complied with the spirit of the order. Finally, if the court attempted to prohibit the appellant from making any reference to the fact that a surgeon at SOMC refused to see him, we believe that such an order is unsupportable.
 {¶ 30} The gist of the appellant's claim against the appellee is that SOMC failed to provide treatment for possible appendicitis because the on-call surgeon would not see him due to his HIV status. Appellant could not prove this claim without establishing that the on-call surgeon would not see him. Appellee cites no authority to support the extraordinary proposition that a court can simply order the exclusion of all evidence necessary to prove a party's claim. We also note that the primary justification offered for the court's order, and subsequent mistrial, was that any reference to Dr. Rooney was hearsay. Hearsay is a statement other than one made by a trial declarant and offered to prove the truth of the matter asserted. Evid.R. 801(C). While counsel did not refer to any verbal comments made by Dr. Rooney, his reference to Dr. Rooney's refusal to treat him comes within the definition of a "statement." Id. at (A). However, a statement offered against a party-opponent, which is a statement by his agent or servant concerning a matter within the scope of agency or employment made during the existence of that relationship, is not hearsay. Id. at (D)(2)(d). Dr. Rooney was the on-call surgeon at SOMC and, thus, operated in some sort of agency relationship to the hospital. His alleged refusal to treat the appellant because of his HIV status was allegedly done in the scope of that employment and during the existence of that relationship. Thus, we do not believe that such a statement would constitute hearsay and the court erred in ordering the comments excluded.
 {¶ 31} Appellee counter argues that Evid.R. 801(D)(2)(d) does not apply here because Dr. Rooney was no longer a party. We disagree. The rule does not state that the agent or servant in question must be a party opponent to the action — only that he have an agency relationship to a principal who is a party opponent.
 {¶ 32} Appellee also argues that the rule cannot apply because there was no evidence of agency. Again, we disagree. The record is replete with evidence that Dr. Rooney worked in some sort of agency relationship with SOMC. To the extent that evidence was not yet introduced at trial on this issue, we would simply point out that this dispute occurred on voire dire and that no evidence had yet been introduced to the jury on any issue.
 {¶ 33} Finally, the appellee argues that Evid.R. 801(D)(2)(d) does not apply because the agency claim in count three was dismissed. First, we note that we have now reversed that dismissal. Second, as we stated above, there is no requirement in the rule that Dr. Rooney be a party to the action — only that he have an agency relationship with some entity that is a party.
 {¶ 34} In summary, we discern no reasonable explanation for excluding reference to the actions of an on-call surgeon at SOMC and we certainly see no explanation for granting a mistrial on the basis of referring to that surgeon. Generally speaking, trial courts enjoy broad discretion in ruling on motions for mistrial. State v. Iacona (2001), 93 Ohio St.3d 83,100, 752 N.E.2d 937; State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343 and decisions on such motions will not be reversed absent a showing of an abuse of that discretion. See State v. Swain (Jan. 23, 2002), Ross App. No. 01CA2591; State v. Pizzillo (Jan. 17, 2002), Carroll App. No. 746; State v. Dunham (Aug. 13, 2001), Butler App. No. CA2000-11-224.
 {¶ 35} Based upon those reasons set forth previously, we conclude that under the circumstances present in the instant case, the court abused its discretion in granting the appellee's request for a mistrial. Consequently, the court should not have ordered the appellant to pay the appellee's attorney fees or expert witness fees.
 {¶ 36} For these reasons, we hereby sustain the appellant's first and third assignments of error.
 III {¶ 37} We now turn to the appellant's second assignment of error which concerns the directed verdict entered against him at the second (March 3, 2004) trial. At the outset, we note that the procedure involved in this proceeding was, due to the parties' request, somewhat unusual. First, the vehicle set out in the Ohio Rules of Civil Procedure to obtain a directed verdict is a "motion." See Civ.R. 50. By definition, a motion is an application to the court for an order. Civ.R. 7(B). Neither side requested such relief and thus, the directed verdict in this case was entered sua sponte.[5] While courts do possess inherent authority to do this, Ray v. Plaza Mini Storage, Inc. (May 23, 2001), Lorain App. No. 00CA7734; Stephens v. Ratcliff (Jul. 26, 1993), Lawrence App. No. 92CA29; Adams v. Coleman (Jan. 22, 1991), Scioto App. No. 1853, the March 24, 2004 judgment and April 5, 2004 amended judgment expressly state that such a verdict is being entered "upon Motion and for good cause shown." (Emphasis added.) This appears to contradict the trial transcript.
 {¶ 38} Furthermore, Civ.R. 50(A) specifies that the appropriate time for a directed verdict is (1) on the opening statement of the opponent, (2) at the close of the opponent's evidence or (3) at the close of all the evidence. In this case, the trial court granted the directed verdict before any opening statement was delivered.
 {¶ 39} We also question the reasons for granting a directed verdict. What ultimately led to that judgment was the trial court's decision to prohibit Dr. Rooney from testifying at the second trial. We note that Dr. Rooney would have been permitted to testify at the first trial had he been successfully subpoenaed. We see no reasonable explanation for excluding his testimony at the second trial. Ostensibly, the trial court justified its decision on grounds that appellant was attempting "to benefit" from "willful misconduct." We, however, are not persuaded that this was the case.
 {¶ 40} If the trial court's order was to refrain from mentioning Dr. Rooney by name, or refrain from repeating comments that he made, then the appellant complied with that order. Not once in the "mini-opening statement" did the appellant refer to Dr. Rooney by name or to any statements he made. If the trial court's order was to refrain from making any mention that a surgeon refused to see appellant, then this was manifestly unreasonable. Appellant could not prosecute this case without proving that the on-call physician refused to treat him.
 {¶ 41} Moreover, we question the trial court's decision to exclude Dr. Rooney's testimony from trial. The testimony of this witness is an integral part of appellant's case in chief. To order this testimony's exclusion, even for willful misconduct, may exceed the boundaries of fundamental fairness. Appellee cites no authority to support this action and we have found none in our own research. Further, we note that even with the exclusion of Dr. Rooney's testimony, other evidence could have been adduced to establish that Dr. Rooney would not treat the appellant.
 {¶ 42} It is axiomatic that a motion for directed verdict presents a question of law and we conduct a de novo review of a trial court's judgment. Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6,13, 656 N.E.2d 957; Keeton v. Telemedia Co. of Southern Ohio (1994),98 Ohio App.3d 405, 409, 648 N.E.2d 856; Meade v. National Bank ofAdams County, Adams App. No. 02CA733, 2002-Ohio-5747, at ¶ 24. For those reasons set forth previously, we conclude that the trial court erred by granting a directed verdict to the appellee.
 {¶ 43} Appellee counters that a directed verdict is justified because the appellant's own evidence showed that no violation of any duty of care occurred. Specifically, the appellee points to hospital records which purport to show that the appellant agreed to transfer to the hospital in Columbus. Appellee further argues that Joan Wurmbrand, M.D., appellant's own expert, stated in deposition that "no violation of care" occurred if the appellant agreed to the transfer. We are not persuaded.
 {¶ 44} First, with regard to the evidence purporting to show that appellant voluntarily agreed to go to a Columbus hospital, we addressed that issue in Fiske II. Appellant stated in one of his depositions that he "didn't like the fact that [he] had to leave Portsmouth to get treatment, but that seemed to be [his] only option." We interpreted that testimony as follows:
"To begin, we do not necessarily interpret this testimony the same way as do appellees and the court below. Appellant stated that he had been told that Dr. Rooney would examine him but only "if there was no other place that would accept [him]." Construing that statement most strongly in his favor, as we are required to do under Civ.R. 56(C), we cannot conclude that this was an admission by appellant that Dr. Rooney had agreed to treat him. Reasonable minds could just as easily conclude that the conditions placed on that treatment (i.e., that appellant first exhaust all possible avenues of treatment in Columbus) was tantamount to a refusal of treatment. Similarly, reasonable minds could also conclude that the decision to seek treatment in Columbus was not voluntarily agreed upon. Appellant stated that he agreed to go to Columbus because Dr. Dale had told him that it was the "thing to do" and "when you're under the care of a physician * * * [y]ou do whatever the physician suggests." This would seem to us to be particularly true when one is diagnosed with a possible case of appendicitis. Appellant could hardly be expected to debate the finer points of Dr. Rooney's conditional promise of treatment when he believed himself to be faced with a possible future rupture of his appendix. The trier of fact could reasonably conclude fromthis evidence that appellant was forced to leave Portsmouth and seektreatment in Columbus." (Emphasis added.) 126 Ohio App.3d at 659.
 {¶ 45} We held in Fiske II that the question of whether the appellant voluntarily agreed to go to Columbus for treatment is a question for the trier of fact. Appellee cites nothing to prompt us to change our opinion and we thus adhere to that position again in this case. Appellant's argument that no violation of a duty of care occurred because of the voluntary transfer to another hospital belies the appellant's evidence that appellant's transfer was, in fact, not voluntary. As we said inFiske II, this is an issue for the trier of fact.
 {¶ 46} As for what was said by appellant's expert, Dr. Wurmbrand, the appellee does not cite the particular portion of her testimony on which it relies. Having read her October 22, 1996 deposition, we find that Dr. Wurmbrand testified in pertinent part:
"A. It appears to me that the emergency room physician, Dr. Dale, made an appropriate assessment of Mr. Fiske and told Mr. Fiske that he needed a surgical consult. And according to Dr. Dale's notes, the surgeon on call, Dr. Rooney, declined to see the patient.
I believe that under those circumstances, that it is the obligation ofthe hospital, in the form of Dr. Dale, who represents the hospital asbeing an emergency room physician, to, in some way, see that a surgeonsaw the patient who needed a surgical consult.
* * when a physician is not responding and fulfilling his obligations[it] would be an obligation of the hospital in this circumstance."
 * * *
Q. But in this case, again, Dr. Dale did get a surgical consult with this gentleman in Columbus?
A. I don't have any evidence that Dr. Dale arranged the surgical consult.
Q. If he did — and let me represent to you that he did — if that's the case, then that meets the standard of care that after whatever transpired in Portsmouth took place, he got a surgical consult for this gentleman. I mean, that's really what you're looking at as a standard of care is that this man get a surgical consult for whatever complaints he had?
A. I would think that a hospital that, again, holds itself out as afull-service hospital would be able to provide that service inPortsmouth, if the patient wished that to happen. And my understanding isthat that was the wish of the patient.
 * * *
Q. Okay. I'm not sure I still quite understand the point that if, in fact, regardless of what transpired in Portsmouth, a surgical consultation was arranged in Columbus, do you find that to be a deviationof standard of care.
 A. Yes.
Q. Tell me why that's a deviation.
A. Because I believe that a patient has the right to be treated in acommunity hospital for a simple problem that a community hospital shouldhave the ability to treat." (Emphasis added.)
 {¶ 47} In short, appellant's expert, Dr. Wurmbrand, does not state that SOMC followed the requisite duty of care. Rather, she testified that the hospital deviated from its duty of care by not providing the appellant a surgical consult. The only way Dr. Wurmbrand's testimony can be construed to support appellee's argument is if, in fact, the appellant voluntarily agreed to go to Columbus. However, as set forth previously in this opinion, and as discussed in Fiske II, this matter is a question for the trier of fact.
 {¶ 48} For these reasons, we hereby sustain appellant's second assignment of error.
 {¶ 49} Having sustained all of the assignments of error, we hereby reverse the trial court's judgment and remand this case for further proceedings.
Judgment reversed and case remanded for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and this case be remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee the costs herein taxed. The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., Kline, J. Grey, J.: Concur in Judgment Opinion
[1] It appears from the record that the appellant had difficulty in locating Dr. Rooney and had not yet served a subpoena on him to testify. We also note that we have no written record of the trial court's order — either in entry form or in the transcript — and, thus, have no way to positively ascertain the precise boundaries of that order.
[2] Appellee argued that the appellant purposely caused the prior mistrial because he had not successfully subpoenaed Dr. Rooney and should not be allowed to profit from that action and have Dr. Rooney testify at the second trial attempt.
[3] Insofar as the discrimination component of count three is concerned, an action based on liability created by statute must be brought within six years after accrual of the cause of action. R.C.2305.07. This is the statute that generally applies to a discrimination claim. See 66 Ohio Jurisprudence 3d (2002)149, Limitations and Laches, § 24. R.C. 2305.10 and R.C. 2305.11(A) provide, respectively, for two year and one year limitation periods on actions for bodily injury and malpractice. Both statutes, however, have been amended several times since the appellant was first the victim of alleged malpractice. Because the appellant is past the time limit in any version of either statute, we need not pinpoint precisely which is at issue here.
[4] One must distinguish between acts of malfeasance and acts of nonfeasance. Malfeasance is the positive commission of an act which is wholly unlawful and which the person ought not to do. Black's Law Dictionary (5th Ed. 1979) 862. An intentional tort, like assault, is an act of malfeasance. Nonfeasance, on the other hand, is the nonperformance of an act which ought to be performed and which amounts to a total neglect of duty. Id. at 950. Appellant in this case alleged nonfeasance by Dr. Rooney, not malfeasance.
[5] It appears from the trial transcript that the appellant made his proffer of evidence to the court in anticipation that the appellee would move for such an order. We, however, do not find any such motion.