OPINION
{¶ 1} Plaintiffs-appellants, Ciera Ridgeway, Jessica Gahn, Deborah Watkins, and Saroeun Tith (collectively "appellants"),[1] appeal the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Bob Evans Farms, Inc. ("Bob Evans") and William Pyles ("Pyles") (collectively "appellees").[2]
 {¶ 2} Appellants' complaint alleging false imprisonment, intentional infliction of emotional distress, assault, and battery, stems from an incident that occurred on December 18, 2004, at the Bob Evans Restaurant located on Georgesville Square Drive. Defendant Patricia Carlisle ("Carlisle") was the Assistant Store Manager at the time. Carlisle had borrowed jewelry from fellow employee Midge Carr ("Carr"), to wear to a Christmas party. The jewelry included a tennis bracelet, diamond earrings, and a diamond ring. After noticing the jewelry was missing from the manager's office, Carlisle informed appellee William Pyles ("Pyles") of the circumstance. Both Carlisle and Pyles searched the office, but to no avail. Pyle proceeded to look in trash bins, including trash bags already placed in the outside dumpsters.
 {¶ 3} Believing that an employee stole the jewelry, Carlisle called the police, and an officer from the Columbus Police Department arrived. After declining Carlisle's request to do a "strip search" of the employees, the officer took a report and left. Subsequently, Carlisle ordered a "strip search" of the employees and appeared to focus her attention on the female employees, believing that one of them had taken the jewelry for her own personal use.
 {¶ 4} Carlisle was heard to say that no one was going to be permitted to leave the restaurant until the missing items were found. Appellants Watkins and Gahn went into the restroom together. Watkins testified at her deposition that Carlisle instructed her to unbutton her shirt and her bra, and shake the garments out. Further, Watkins explained that Carlisle told them to take off their pants, but Gahn refused and left the restroom. After Gahn left, Watkins pulled her pants down and dropped them to the bathroom floor.
 {¶ 5} According to Gahn, she volunteered to be one of the first persons to be searched and entered the restroom with Watkins. Gahn testified that she asked Carlisle what to do, but Carlisle said nothing. Thereafter, Gahn asked Watkins what to do, and Watkins told her to unbutton her top. Gahn explained that she untucked both her under and over shirts, and shook them out. Thereafter, she and Watkins traded aprons and searched them. After searching the aprons, Gahn refused to do anything else and left the restroom to go home.
 {¶ 6} Appellant Ridgeway testified that she entered the restroom when Watkins told her to go in next. According to Ridgeway, no one told her to take off any of her clothing, but she proceeded to take off her apron and shoes, unbutton her shirt, and shake out her shirt and bra. Ridgeway also unbuttoned her pants and shook them out, but did not take them off or pull them down.
 {¶ 7} Appellant Tith testified that Carlisle asked her to go into the restroom. While Carlisle was not in the restroom with her, Carr was. Although not asked to take off any of her clothing, Tith removed her shirt, bra, pants, panties, and shoes. Tith explained that she felt compelled to "prove herself" because Carlisle and Carr were "pointing the finger at [her]." (Depo. at 56.)
 {¶ 8} When Pyles returned from searching the outside dumpsters, Carlisle had finished her shift and left the premises. When he learned of what had happened, Pyles called Area Director Ron McIntyre to inform him of what had transpired. After an investigation, Carlisle was terminated for misconduct.
 {¶ 9} Appellants filed their complaint on April 6, 2005. On January 23, 2006, appellees moved for summary judgment arguing that they are not liable for the intentional acts of Carlisle, and that appellants' claims for battery, assault, false imprisonment, and intentional infliction of emotional distress fail as a matter of law. By written decision rendered on March 13, 2006, the trial court granted judgment as a matter of law in favor of appellees as to all counts of the complaint. Judgment reflecting the trial court's decision was rendered on June 21, 2006.
 {¶ 10} Appellants timely appealed, and bring the following two assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS BY GRANTING SUMMARY JUDGMENT TO BOB EVANS FARMS, INC.
 ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS BY GRANTING SUMMARY JUDGMENT TO WILLIAM PYLES.
 {¶ 11} Appellate review of summary judgment motions is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star BancCorp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel.Grady v. State Emp. Relations. Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 12} Appellants' claims arise solely from Carlisle's actions, which, they argue, were committed within the course and scope of her employment. We begin by noting that appellants have failed to cite to any legal authority relative to this assignment of error. As such, they have not met their burden of affirmatively demonstrating error on appeal. App.R. 16(A)(7); State ex rel. Petro v. Gold,166 Ohio App.3d 371, 392, 2006-Ohio-943, appeal not allowed, 110 Ohio St.3d 1439,2006-Ohio-3862, reconsideration denied, 111 Ohio St.3d 1418,2006-Ohio-5083. In the interests of justice, however, we will address this assignment of error.
 {¶ 13} For an employer to be liable under the doctrine of respondeat superior, an employee's tortious act must be committed and, if an intentional tort, it must be calculated to facilitate or promote the employer's business or interest. Wynn v. Ohio Dept. of Job FamilyServs., Franklin App. No. 04AP-163, 2005-Ohio-460, at ¶ 6, citingBrowning v. Ohio State Hwy. Patrol, 151 Ohio App.3d 798, 2003-Ohio-1108, at ¶ 60; DiPietro v. Lighthouse Ministries, 159 Ohio App.3d 766,2005-Ohio-639. Generally, if the employee tortfeasor acts intentionally and willfully for his own personal purposes, the employer is not responsible, even if the acts are committed while the employee is on duty. Browning, supra (citations omitted). In other words, "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." Byrd v. Faber (1991),57 Ohio St.3d 56, 59; see, also, Groob v. Keybank, 108 Ohio St.3d 348, 358,2006-Ohio-1189, at ¶ 58 ("an employer is not liable under a theory of respondeat superior unless its employee is acting within the scope of her employment when committing a tort — merely being aided by her employment status is not enough").
 {¶ 14} Applying this standard to the present case, we find that Carlisle's actions were not committed while she was within the scope of her employment. It is undisputed that the missing jewelry, which prompted Carlisle to act, was not the property of Bob Evans. Further, appellants' deposition testimonies establish that they did not perceive Carlisle's actions as either having to do with the operation of Bob Evans, or otherwise advancing its interests. (Ghan depo. at 83, 84; Ridgeway depo. at 66; Sok depo. at 62, 63; Watkins depo. at 76, 97.) Simply stated, there is no evidence in the record that Carlisle's actions were in any way designed to facilitate the business of, or resulted in a benefit to, Bob Evans. Instead, the only reasonable inference to be drawn is that Carlisle's actions were personal and self-serving.
 {¶ 15} Further, the fact that Carlisle committed these acts while "on duty" is irrelevant, as her actions were so divergent from her employment that they severed any existent employment relationship. See, e.g., Groob, supra; Caruso v. State (2000), 136 Ohio App.3d 616 (the fact that the conduct constituting the tort was committed while the employee was on duty and supposedly performing services for the employer does not render the employer liable where the employee deviated or departed from the employer's business to engage upon a matter for personal purposes without benefit to the employer); Consolidated Invest.Corp. v. Kemper Ins. Co. (Dec. 23, 1999), Ashtabula App. No. 98-A-0094, discretionary appeal not allowed, 88 Ohio St.3d 1503. In fact, Bob Evans' corporate policy expressly prohibited the type of conduct about which appellants complain. (Memorandum issued by Bob Evans on February 20, 2004, attached to affidavit of Ron McIntyre). Given that Carlisle's actions violated Bob Evans' corporate policy, we cannot reasonably construe her conduct as promoting or facilitating the business of Bob Evans.
 {¶ 16} A case that lends support to our decision is Hester v. Church'sFried Chicken (1986), 27 Ohio App.3d 74. In Hester, a supervisor flew into a fit of rage and physically assaulted an employee under his charge. The First District Court of Appeals held that no liability could attach to the employer under the doctrine of respondeat superior because the supervisor's tortious conduct was not committed within the course and scope of his employment. The court explained:
 [T]he assault in question followed an attempt by the tortfeasor to reprimand one of the employees under his supervision for what he apparently regarded as an instance of unsatisfactory job performance. It began harmlessly enough with several disparaging remarks about the employee's personal life, but ended only moments later in a fit of rage when the tortfeasor grabbed the employee by her collar, threw her to the ground and kicked her in the back.
 Although it may be said on the state of this record that the tortfeasor had the authority to engage in limited forms of disciplinary action in accordance with the established policies of his employer, there is nothing to controvert the employer's evidence that such authority did not extend to the unprovoked use of physical violence against a fellow employee; nor is there any tenable factual basis to support a finding that the tortfeasor's actions apart from the initial reprimand were ratified by his employer. In our view, the only reasonable conclusion to be drawn from the evidence is that the tortfeasor simply lost his temper and was motivated to commit the assault solely out of feelings of personal ill will and malice harbored against his victim. * * *
Id. at 75. See, also, Jackson v. Saturn of Chapel Hill, Stark App. No. 2005-CA-00067, 2005-Ohio-5302, at ¶ 27 ("In the case sub judice, even if the acts of Chamberlain went beyond appellee's euphemistic label of `mutual horseplay,' the record does not support the proposition that such allegedly tortious conduct in any way facilitated or promoted appellee's main enterprise of selling and servicing automobiles.");Hogan v. Field Container Corp. (2001), 145 Ohio App.3d 446 (liability could not be imposed upon an employer for the intentional tortious conduct of its employee when the employee's action was personal in nature and there was no testimony that the employee's conduct furthered the employer's business in any way).
 {¶ 17} Given all the above, we find there is no genuine issue of material fact as to whether Carlisle's conduct was within the scope of her duties, whether her conduct was a reasonably foreseeable outgrowth of these duties, and/or whether her actions were calculated to facilitate or promote Bob Evans' business. Carlisle's search of appellants was an independent, self-serving act that was clearly outside the scope of her employment. As such, Bob Evans cannot be liable to appellants under the theory of respondeat superior. Accordingly, appellants' first assignment of error is overruled.
 {¶ 18} In their second assignment of error, appellants argue that the trial court erred in granting summary judgment to Pyles on appellants' claims for assault,[3] false imprisonment,[4] and intentional infliction of emotional distress.[5] We disagree. It is undisputed that Pyles was not physically present while Carlisle was conducting her search of appellants, but, instead, was looking outside in the garbage dumpsters for the missing jewelry. Appellants do not assert that Pyles had notice of Carlisle's decision to search appellants, nor do they assert that he was notified about the searches while they were taking place. In fact, the record discloses that Pyles was not informed about Carlisle's actions until after she concluded hersearch of appellants. Although appellants' complaint describes Pyles as, essentially, acting in concert with Carlisle, the evidence produced does not, at a minimum, support these allegations.
 {¶ 19} Based on the foregoing, we conclude that the trial court properly found that there were no genuine issues of material fact regarding appellants' claims for assault, false imprisonment, and intentional infliction of emotional distress, and that Pyles was entitled to judgment as a matter of law as to these claims. Accordingly, appellants' second assignment of error is overruled.
 {¶ 20} For these reasons, we conclude that there is no genuine issue of material fact, and that appellees are entitled to judgment as a matter of law. Appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur.
[1] Plaintiff Jennifer Bauman filed a notice of dismissal without prejudice of her claims against Bob Evans Farms, Inc. and William Pyles pursuant to Civ.R. 41(A) on November 21, 2005.
[2] Defendant Patricia Carlisle was found to be in default in November 2005.
[3] The tort of assault is defined as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact.Smith v. John Deere Co. (1993), 83 Ohio App.3d 398, 406.
[4] To prove a claim for false imprisonment under Ohio law, a plaintiff must demonstrate that she was confined without lawful privilege and against her will or consent within a limited area for any appreciable time. Bennett v. Ohio Dept. of Rehab. Corr. (1991),60 Ohio St.3d 107, 109. However, the victim's "submission to the mere verbal direction of another, unaccompanied by force or threats of any character, cannot constitute false imprisonment, and there is no false imprisonment where an employer interviewing an employee declines to terminate the interview if no force or threat of force is used, and false imprisonment may not be predicated on a person's unfounded belief that he was restrained." Kinney v. Ohio Dept. of Admin. Serv. (Aug. 30, 1988), Franklin App. No. 88AP-27.
[5] To maintain a claim for intentional infliction of emotional distress, the following elements must be proved: (1) the defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. Ashcroft v. Mt. Sinai Medical Ctr. (1990),68 Ohio App.3d 359, 366. In order to constitute serious emotional distress for the purposes of an intentional infliction of emotional distress claim, the injury that is suffered must surpass upset or hurt feelings, and must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Davis v. Billow Co. Falls Chapel (1991),81 Ohio App.3d 203, 207. Liability does not extend to mere insults, trivialities, annoyances, indignities, threats or petty oppressions.Yeager, supra, at 374-375.