DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Multilink Inc., et al, appeal the judgment of the Lorain County Court of Common Pleas. We reverse.
 I. {¶ 2} This case arises out of a lease agreement between Multipower (nka Multilink)[1] and Arnold Tollett and his wife, Jo Tollett (collectively known as "the Tolletts") for commercial property jointly owned by the Tolletts located at 561 Ternes Ave. in Elyria, Ohio. In 1998, the parties entered into a lease agreement under which Multipower agreed to pay the Tolletts $6500 per month to lease the commercial property. The lease agreement called for a six month term and stated that after the expiration of this six month period, the lease would continue from year-to-year upon the same terms and conditions, except that the parties would renegotiate the price.
 {¶ 3} In June of 1999, the parties extended the agreement until June of 2000. Arnold Tollett fell ill in the Spring of 2000. Consequently, Mr. Tollett was unable to draft a writing to extend the parties' lease agreement. Multipower continued to occupy the property throughout this period despite the lack of an agreement extending their term. Appellants contend that in the Spring of 2000, they decided to downsize. Consequently, they no longer needed the entire building. Appellants assert that they informed Mr. Tollett of their situation and he ultimately orally agreed to (1) change the lease term to month-to-month and (2) reduce the rental rate to $4500 per month.
 {¶ 4} Multipower began paying a reduced rent of $4500 per month, instead of the amount they had previously paid — $6500 per month. During the months of July, August, September, October, November, and December of 2000, and January 2001, the Tolletts received checks from Multilink, each in the amount of $4500. The July, August and September checks were made payable to Arnold Tollett while the remaining checks were made payable to Jo Tollett. The July, August and September checks were accepted by the Tolletts and cashed. Jo Tollett accepted and cashed the October and November checks for this reduced rate.
 {¶ 5} Arnold Tollett passed away in September 2000. In December of 2000, Jo Tollett sent a letter to Multipower informing them that the lease agreement required them to pay $6500 per month. Multipower responded, asserting that the parties orally agreed to extend the lease from June of 2000 to June of 2001 at a reduced rate of $4500 per month. Multipower moved out of the building in January of 2001.
 {¶ 6} Appellee, the Estate of Arnold Tollett, filed suit on October 18, 2002, alleging that Multilink breached its lease agreement with the Tolletts in 2000 by failing to tender the agreed rental amount of $6500 and by failing to tender monthly payments for the rental term of January 2001 to June 2001.[2]
 {¶ 7} On September 24, 2003, the case proceeded to a bench trial. At the close of its case, Appellee moved for a directed verdict. The trial court denied the motion. The trial court issued its decision on November 23, 2003, finding that Appellants owed Appellee $22,500.00. Appellants timely appealed the court's judgment. However, on February 4, 2005, this Court dismissed Appellants' appeal for lack of a final appealable order. Specifically, this Court found that the trial court had failed to affirmatively enter judgment in the amount it awarded to Appellee. On January 9, 2006, the trial court amended its November 21, 2003 order nunc pro tunc to make it a final appealable order. Appellants timely appealed the trial court's decision, raising two assignments of error for our review.
 {¶ 8} This Court scheduled oral argument in this matter for September 7, 2006. On September 5, 2006, Appellee filed a motion to dismiss the appeal for failure to comply with App.R. 18, or in the alternative, a motion for reconsideration of this Court's August 30, 2006 decision denying Appellee's motion for leave to file its brief instanter. Appellee contends that it was not properly served with Appellants' brief and thus did not file a responsive brief. Appellants filed a brief in opposition on September 6, 2006. In their brief, Appellants assert that the certificate of service attached to their appellate brief establishes that they properly served Appellee.
 {¶ 9} There is a presumption that proper service exists when the record reflects that the Civil Rules pertaining to service of process have been followed. Potter v. Troy (1992),78 Ohio App.3d 372, 377. This Court finds that Appellants properly appended a certificate of service to their motion, certifying service by regular mail to Appellee on March 22, 2006. Therefore, Appellee's motions are denied.
 {¶ 10} We have rearranged Appellants' assigned errors to facilitate our disposition thereof.
 II. ASSIGNMENT OF ERROR II
"THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE PARTIES HAD NOT ORALLY AGREED TO A MONTH-TO-MONTH LEASE."
 {¶ 11} In their second assignment of error, Appellants claim that the trial court's decision that the parties had not orally agreed to a month-to-month lease was against the manifest weight of the evidence. We agree.
 {¶ 12} We review whether a judgment is against the manifest weight of the evidence in a civil context utilizing the same standard of review as that used in the criminal context.Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at *6. This Court must, therefore, review the entire record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 13} Further, this Court has stated that it "will not reverse the judgment of the trial court as being against the manifest weight of the evidence if the judgment is based upon some competent, credible evidence that speaks to all of the material elements of the case." Morris v. Andros,158 Ohio App.3d 396, 2004-Ohio-4446, at ¶ 18. "This standard is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent reversal." Bell v. Joecken (Apr. 10, 2002), 9th Dist. No. 20705, at *2.
 {¶ 14} It is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses, view their demeanor and weigh the evidence. Akron v. Portman, 9th Dist. No. 22921, 2006-Ohio-2856, at ¶ 13; DeHass, 10 Ohio St.2d at paragraph one of the syllabus. In this case, the court did not make such a determination, but instead expressly ignored the testimony of three witnesses by finding "[t]hat other than the inquiry made by Jo Ann Tollett as to the amount of rent payable no other evidence was presented by any party." Upon review of the trial court's judgment, we find that Appellants' three witnesses-Steve Kaplan, Phil Tollett and Joe Myor-all testified that the parties had agreed to a month-to-month tenancy.
 {¶ 15} Steve Kaplan testified as follows. In the spring of 2000, he talked with Arnold Tollett about modifying the leasing arrangement to a month-to-month tenancy and a reduced monthly rate. Mr. Tollett was aware that Multilink was building a new building to house the company and that they did not need all the space they were currently leasing. In addition, Mr. Tollett was aware that Multilink could vacate the premises at any time. Phil Tollett, Arnold Tollett's son, informed him that Arnold Tollett agreed to the lease changes. No one ever informed Mr. Kaplan that Phil Tollett did not have authority to communicate on his father's behalf. Phil frequently communicated messages from his father to Multipower.
 {¶ 16} Appellants also called Joseph Myor, Chief Financial Officer of Multilink, from October of 1999 through June of 2000, to testify. He testified as follows: One of his duties as Appellants' CFO was to negotiate the company's leases. In April of 2000, he talked with Arnold Tollett about changing the lease terms. Multipower had decided to build another building and planned to move the business into the new building. They realized that the new building would not be completed by June 30, 2000. Consequently, Mr. Myor approached the Tolletts about remaining in their building on a month-to-month basis and requested a reduced monthly rate. Arnold Tollett did not like the idea of reducing the monthly rate. Mr. Myor then explained to Arnold and Phil Tollett that if they could not obtain a reduced rate, Multipower would simply "pull the business out." He did not personally obtain Arnold or Phil Tollett's consent to either the lowered rate or the month-to-month term. However, when he left the meeting with the Tolletts, he felt that they had acquiesced to the month-to-month arrangement. In late May 2000, Mr. Kaplan told Mr. Myor that Arnold and Phil Tollett had agreed to the lower rate and month-to-month term. Mr. Myor ended his employment with Multipower in early June of 2000.
 {¶ 17} Phil Tollett also testified at trial. Phil testified that (1) he assisted his father in his business affairs during 2000 when his father became terminally ill; (2) in the spring of 2000, Mr. Myor approached Arnold Tollett about non-renewing the lease or changing the lease to a month-to-month term for less rent per month; (3) his father agreed to a new lease with Multilink at a reduced rate of $3500 per month for a month-to-month tenancy; and (4) once he realized that Multilink might vacate the premises on short notice, his father hired a realtor to help him sell the property.
 {¶ 18} At trial, Phil testified that despite his ailing health in 2000, his father was mentally sound. He testified that his father was "crystal clear" regarding his business dealings until approximately a week before his death. While we note that Phil testified inaccurately regarding the reduced rental rate, we find this testimony largely consistent with testimony from Mr. Kaplan and Mr. Myor that (1) in the spring of 2000, Mr. Myor approached Arnold and Phil Tollett regarding a change in the lease agreement; (2) Mr. Tollett hired a realtor in the spring of 2000 to help him sell the property; and (3) Mr. Tollett orally consented to the reduced rental term and month-to-month tenancy.
 {¶ 19} Appellee introduced a letter dated December 13, 2000 from Steve Kaplan to Appellee's attorney, Steve Ott. The letter stated in pertinent part that "during a discussion concerning Multipower moving their location from 561 Ternes Ave. a verbal agreement with Arnold and Phil Tollett to cover the period of June 2000 through June 2001 was made." Mr. Kaplan testified that his controller, Sue Helbig, prepared the letter and signed it for him.
 {¶ 20} The only witness that testified on Appellee's behalf was Jo Tollett. Mrs. Tollett testified that one day during the summer of 2000, her husband came home from the office and appeared very angry. She testified that he told her that Appellants wanted to lower their rent payments. He told her that he was not going to let that happen. She additionally testified that Arnold never told her that he lowered the rental payment.
 {¶ 21} According to Jo Tollett, her husband was not in good mental health during the summer of 2000. She testified that his sons were taking care of his business matters for him because of his poor condition. However, she also testified that despite his failing health, her husband knew what properties he owned and how much people owed him. She also testified that the December 2000 letter she received from Steve Kaplan said that the agreed rental period was from June 2000 to June 2001. Jo Tollett did not testify regarding the month-to-month arrangement.
 {¶ 22} This case presents a unique and unfortunate scenario in that (1) one of the two parties to the lease agreement has since passed away and (2) the parties did not memorialize their agreement in writing. Upon review of the evidence before us — including trial testimony, exhibits and the 1998 written lease agreement — we find ample evidence supporting Appellants' position that the parties orally agreed to a month-to-month term. We are particularly mindful of testimony from Arnold Tollett's son, Phil, that largely supported Appellants' case. We find no provision in the parties' lease agreement that prohibits the parties from entering into a new lease arrangement. The lease agreement provided in pertinent part:
"[U]pon the expiration of the original term hereof this lease shall Continue [sic] from year to year upon the same terms and conditions as herein set forth except that the rental for each successive yearly term shall be negotiated by the parties hereto prior to the commencement of each such term, unless either of the parties hereto at least thirty (30) days prior to the expiration of an existing term gives written notice to the other of their termination of this lease."
Furthermore, although Steve Kaplan's December 2000 letter referenced the period of June 2000 through June 2001, this letter did not state that the rental period was extended to an additional year-to-year term. The letter merely states that the parties had reached an agreement that "cover[ed] the period of June 2000 through June 2001." Absent evidence to the contrary, we interpret the letter as establishing that the parties agreed to a month-to-month term that could extend on a month-to-month basis until June 2001. Given the testimony supporting Appellants' position that the parties agreed to a month-to-month tenancy, we find that the trial court's judgment was against the manifest weight of the evidence. Appellants' second assignment of error is sustained.
 ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN NOT FINDING IN FAVOR OF [APPELLANTS] AT THE CLOSE OF [APPELLEE'S] CASE AND AT THE CLOSE OF ALL THE EVIDENCE."
 {¶ 23} In their first assignment of error, Appellants claim that the trial court erred in failing to rule in their favor. More specifically, Appellants assert that the trial court erred in failing to dismiss Appellee's cause of action pursuant to Civ.R. 41(B)(2).
 {¶ 24} In light of our disposition of Appellants' second assignment of error, Appellants' first assignment of error is rendered moot. Therefore, we decline to address it. Appellants' first assignment of error is overruled.
 III. {¶ 25} Appellants' second assignment of error is sustained. Appellants' first assignment of error is rendered moot. The judgment of the Lorain County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Slaby, P.J. Carr, J. concur.
[1] On June 30, 2002, Multipower and Multilink merged. Multilink is the surviving entity.
[2] Appellee asserted four additional claims in its complaint. However, Appellee presented no evidence at trial regarding its other four claims and the trial court did not rule on those claims. Therefore, we will not address Appellee's additional claims.